**CAMPBELL v. DUNCAN et al.**
No. LR–1750.

United States District Court
E. D. Arkansas, W. D.
June 25, 1949.

Ohmer C. Burnside, Lake Village, Ark., for plaintiff.

Fred P. Branson, Muskogee, Okl., pro se.

Thomas L. Cashion, Eudora, Ark., for defendant Duncan.

LEMLEY, District Judge.

This is an action on a promissory note given by the defendants to one J. W. King, a non-resident real estate broker, for his commission in effecting a sale of lands located in the State of Arkansas, said note having been assigned by King to the plaintiff, King at the time of said transaction not being the holder of an Arkansas real estate license.

At the conclusion of the case the Court made the following findings of fact, and drew the following conclusions of law and commented in writing on said findings and conclusions as follows:

### Findings of Fact.

1. Plaintiff is a citizen of the State of Mississippi; defendant, J. H. Duncan, is a citizen of the Western Division of the Eastern District of Arkansas; defendant, Fred P. Branson, is a citizen of the State of Oklahoma.

2. This is an action brought by the plaintiff to recover judgment upon a promissory note in the principal sum of $3,615, together with accrued interest and costs. Said note is dated March 6, 1947, was made payable at Greenville, Mississippi, on or before January 1, 1948, and bore interest at the rate of 5% per annum from date until paid; said note was payable to one J. W. King, who later assigned the same to the plaintiff, and was executed by the defendant, Duncan, as maker, and bore the endorsement of the defendant, Fred P. Branson.

3. Said note was in fact executed by Duncan and endorsed by Branson; no part of said note has been paid, and, if said note is valid, both of the defendants are jointly and severally liable thereon for the principal and all accrued interest.

4. The consideration for said note was a real estate commission earned by J. W. King in connection with the sale of a large tract of land in Chicot County, Arkansas, to the defendant, Branson; and the amount of the note represents 5% of the purchase price of the land, which was the commission which was agreed upon between J. W. King and the defendants.

5. J. W. King is a real estate broker doing business at Greenville, Mississippi, and the plaintiff is his step-daughter; she is also a real estate broker at Greenville, and at all times relevant in this case she and King were associated in the real estate brokerage business. At no time during the transactions out of which this litigation grew did either she or J. W. King have an Arkansas real estate broker's license, as required by Act 148 of 1929, as amended by Act 142 of 1931 of the General Assembly of the State of Arkansas, 6 Arkansas Statutes 1947, T. 71, Ch. 13, Secs. 71-1301, 71-1302.

6. The land involved in this case is known as the "Florence Plantation". On February 12, 1946, W. S. Rode of Greenville, Mississippi, the then owner of the land executed a rent and sale contract in favor of the defendant, Duncan, whereby the latter undertook to purchase the plantation for $70,000, $32,000 of which was to be paid in cash over a period of years, and the balance to be represented by Duncan's assumption of a mortgage in favor of Connecticut General Life Insurance Co. The contract provided that time was of the essence, and that default in payment by Duncan would work a forfeiture of his rights.

7. Due to a crop failure in 1946, Duncan was unable to meet his payment to Rode, and Rode, therefore, had a right to declare a forfeiture of the contract and oust Duncan from the land. Rode did not actually declare a forfeiture, but he did begin to "push" Duncan for his money, and Duncan, being in financial distress, became interested in selling the land if a buyer could be found.

8. Early in 1947, the defendant Duncan, while in Greenville, Mississippi on business, listed the Florence Plantation with J. W. King for sale. At about the same time, Rode also listed the plantation with King; this listing also took place at Greenville.

9. On February 23, 1947, King met the defendant, Branson, at Greenville, Mississippi, and undertook to interest him in buying the Florence Plantation. Branson manifested interest, and on the following day King took Branson into Chicot County, Arkansas, for the purpose of showing him the plantation. King did not actually take Branson over the place, this was done by the defendant, Duncan; King, however, did drive Branson to the "Tecumseh Plantation" immediately adjacent to the Florence Plantation and operated by Duncan's brother. King also introduced Branson to the defendant, Duncan, on this trip into Chicot County, Arkansas.

10. After Branson had viewed the land, he and King returned to Greenville, Mississippi, where Branson dictated and signed a firm offer to buy the place for $100,000; Branson then returned to his home in Muskogee, Oklahoma. King obtained the signature of Duncan and wife to a sales contract covering the land and mailed the same to Branson at Muskogee.

11. Branson refused to sign this contract because he had in the meantime discovered that Duncan's only interest in the land was his equity under the rent and sale contract with Rode, with respect to which he was in default. Branson returned to Greenville where he advised King of his decision and told King that he wanted to buy the land from Rode.

12. Duncan was summoned to Greenville and a conference was had between him, Branson, and King. Branson informed Duncan that he owned no real interest in the land, and then made him a proposition whereby Duncan was to operate the plantation as Branson's tenant, and, after Branson had received as rent a sum equal to about one-half of the purchase price, he, (Branson) would convey to Duncan an undivided one-half interest in the land. Duncan, after discussing this proposition with King, accepted Branson's offer, and King was instructed to contact Rode and arrange a sale by him to Branson.

13. Rode agreed to sell the land to Branson for a cash consideration of $36,000 together with an assumption of the Connecticut General's mortgage; he stipulated, however, that he wanted his cash "net", and that King would have to get his commission out of Branson and Duncan, or add it to the amount of the cash consideration to be paid.

14. King informed Branson and Duncan of Rode's position in the matter, and they agreed to pay King a 5% commission to be evidenced by a note signed by Duncan and endorsed by Branson.

15. On March 5, 1947, a deed conveying Florence Plantation to Branson was drawn at Greenville, Mississippi, was executed there by Rode and wife, and delivered to Branson, who then and there paid Rode said sum of $36,000.

16. Thereafter on the following day King, Duncan and Branson went to Lake Village, Arkansas, and at that place a quitclaim deed was executed in Branson's favor by Duncan and wife, and likewise the note here sued on was executed and delivered to King. Branson paid Duncan $4,500, but in this connection the Court finds that such payment was not considered by the parties as a part of the purchase price of the land, but was rather a gratuitous payment to Duncan to compensate him for work and labor done by him on the plantation during the crop year of 1946.

17. Thereafter King assigned the note to the plaintiff, who is not, and does not claim to be, a holder in due course.

18. With respect to Duncan's interest in the land at the time it was finally sold, the Court finds that, irrespective of what Duncan's interest might have been, as a

matter of law, all of the parties, including Duncan had elected to treat the rent and sale contract between Duncan and Rode as having been, in effect, forfeited, and to consider that Rode was the true owner of the plantation and that Duncan had no interest therein. The Court further finds that Duncan, by his acceptance of Branson's proposition above mentioned, abandoned any rights of redemption or other rights which he may have had under the rent and sale contract and estopped himself from re-asserting them against Branson, and that the quitclaim deed from Duncan and wife to Branson was, in effect, merely a curative instrument carrying out the understanding already arrived at between Duncan and Branson in Greenville, Mississippi.

## Conclusions of Law.

1. The Court has jurisdiction of this cause and of the parties thereto.

2. When King transported the defendant, Branson, from Greenville, Mississippi, to Chicot County, Arkansas, to show him the Florence Plantation and there introduced him to the defendant, Duncan, he "performed an act of a real estate broker within the State of Arkansas," and the Arkansas real estate licensing law, 6 Ark. Stats.1947, T. 71, Ch. 13, Secs. 71-1301 to 71-1311 incl., was applicable to the transactions terminating in the sale of Florence Plantation to Branson.

3. Since King had no Arkansas Real Estate Broker's License and, therefore, had not complied with the provisions of said law, neither he nor his assignee can maintain any action to recover his commission in any court in Arkansas, including the United States District Courts within said state.

4. Judgment should be entered for the defendants.

## Comment.

The question in this case is whether or not the Arkansas real estate licensing law, above-cited, precludes a recovery of a real estate commission, unquestionably earned by J. W. King, plaintiff's assignor of the note sued on herein, in consummating the sale to the defendant Branson of the Florence Plantation in Chicot County, Arkansas, under the circumstances detailed in the foregoing findings of fact.

The pertinent parts of the statute, 6 Arkansas Statutes 1947, T. 71, Ch. 13, Sections 71-1301 to 71-1311, inclusive, are as follows:

Section 71-1301. "It shall be unlawful for any person * * * to act as a real estate broker or real estate salesman in Arkansas or to advertise or assume to act as such real estate broker or real estate salesman without first having complied with every provision of this Act (Sections 71-1301--71-1311) and having secured a regular, valid license issued by the Arkansas Real Estate Commission, authorizing the performance of such acts."

Section 71-1302 in part provides, "No recovery may be had by any broker or salesman in any court in this State on a suit to collect a commission due him unless he is licensed under the provisions of this act and unless such fact is stated in his complaint."

Said Section 71-1302 defines a real estate broker as "any person * * * who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, auctions or offers to auction, or negotiate the purchase or sale or exchange of real estate, * * *."

Said Section 71-1302 further provides that "One act for a compensation or valuable consideration * * * shall constitute the one performing it a real estate broker or real estate salesman within the meaning of this act."

Section 71-1309 provides, "A non-resident of this State who performs any of the acts of a real estate broker or real estate salesman within this State must conform to all of the provisions of this act (Sections 71-1301—71-1311) * * *." This section also provides that a non-resident broker or salesman may act through a resident broker licensed under the terms of the Act.

█ If a recovery in this action would be precluded in the State courts, it likewise cannot be maintained in this Court. Union Trust Co. v. Grosman, 245 U.S. 412, 38 S.Ct. 147, 62 L.Ed. 368. And, we have reached the conclusion that it is precluded here.

■ Generally speaking, brokerage contracts are not considered to be such contracts as relate to a transfer of an interest in land so as to bring them within the rule that their validity is to be governed by the law of the state where the land is located; rather are they construed to be contracts of employment, the validity of which is to be determined by the law of the places where they are made. Johnson v. Allen, 108 Utah 148, 158 P.2d 134, 159 A.L.R. 256; Annotation, "Conflict of laws as regards brokerage contracts," 159 A.L.R. 266–280. In numerous cases cited in the annotation just mentioned it was held that non-compliance with brokerage licensing statutes of the state where the land was located did not preclude recovery where the contract of brokerage was valid under the laws of the state where it was made. This general rule, however, cannot be applied here in view of the exceedingly broad provisions of the Arkansas statute above referred to.

■ Neither King nor his assignee, the plaintiff, was the holder of an Arkansas real estate brokerage license at the time of the transactions here involved. As noted, the statute provides that "one act for a compensation or valuable consideration * * * shall constitute the one performing it a real estate broker * * * within the meaning of this act", and that a non-resident of the state "who performs any of the acts of a real estate broker or real estate salesman within this state must conform to all of the provisions of this Act." While it is true that King was employed as a real estate broker both by Duncan and by Rode at a point outside of the State of Arkansas and that all of the significant acts of the parties with respect to the actual consummation of the sale of the lands took place outside of Arkansas, nevertheless King did transport Branson from Mississippi into Arkansas to show him the property, and it was in Arkansas that Branson and Duncan were brought together by King. In the doing of these acts King was performing two of the most important acts of a real estate broker, namely showing the property to the prospective buyer and introducing him to the prospective seller. Without the showing of the property and without the introduction of Branson to Duncan the sale would not have taken place. Both of these acts took place within the State of Arkansas. It is true that King testified that he did not "show" the plantation to Branson, but we do not deem this to be material. He carried Branson to the land and arranged for Duncan to do the actual showing. The bringing together by King of Branson and Duncan also gave Branson the opportunity to evaluate Duncan's ability as a farmer and evidently influenced Branson in making a later offer to, in effect, take Duncan into partnership with him, without which offer the property would probably never have been sold.

Counsel for the plaintiff argues that the trip of King and Branson to Arkansas should be ignored by the Court because of the fact that the original deal between Branson and Duncan fell through, and that the agreement finally consummated was negotiated by King as the agent of Rode and not as the agent of Duncan. While this may be true, it is not of controlling importance here. The various negotiations taking place between all of the parties leading up to the sale were continuous in their nature; Branson decided to buy the land as a result of the inspection he made of it at the instance of King; the mere fact that Branson later discovered that the real title to the land was not in Duncan but in Rode, with whom Duncan was in privity, and that the actual legal title passed from Rode to Branson, rather than from Duncan to Branson, would not justify a conclusion that the final transactions and negotiations were completely isolated from the earlier ones. On the contrary, all of the negotiations and transactions were continuous and connected. In any event, this suit was brought to recover a real estate commission for the sale of land and, in connection with the sale, King performed some of the material acts of a real estate broker within the State of Arkansas without complying with its laws, and it is not material for whom he was acting at any particular moment; the important fact is that he was acting, and that his actions formed a necessary and material part of the transaction, and that he was acting without compliance with the statute.

The statute under consideration was held to be constitutional by the Supreme Court of Arkansas in State v. Hurlock, 185 Ark. 807, 49 S.W.2d 611, but that Court has not directly passed upon the question here involved. The nearest Arkansas decision that we have been able to discover as having a bearing on the instant case is City of Texarkana v. James & Mayo Realty Co., 187 Ark. 764, 62 S.W.2d 42, 43. That case involved the right of the City of Texarkana, Arkansas, to impose occupation taxes upon real estate brokers who maintained offices in the adjacent City of Texarkana, Texas, but who dealt in Arkansas real estate. The Supreme Court of Arkansas in upholding the taxing power of the City, said:

"All of the appellees are engaged in the occupation of real estate dealers in the city of Texarkana, Ark., but maintain their place of business in Texarkana, Tex. They admit that they sell, lease, and rent real estate located in Texarkana, Ark., and that, in order to negotiate for sales and rentals of property located in the city of Texarkana, Ark., they are forced to take their clients to the location of the property in Texarkana, Ark., to show same to them, to collect the rents, and do other things in connection with the sale and renting of property located within this city. All admitted that they were licensed real estate dealers under said Act No. 148 p. 742 of 1929, as amended by Act No. 142 p. 380 of 1931, with the exception of Mrs. C. E. Swindell.

"* * * it is undisputed that the appellees were doing everything necessary to carrying on the business of real estate brokers in the city of Texarkana, Arkansas, except that they had their places of business situated across the state line in Texas, where most of the negotiations for carrying on the business were consummated. * * *

"The conduct of business in the city of Texarkana, Ark., by appellees brings them easily within the terms of the definition of a real estate broker as provided in section 2 of Act No. 142 p. 380 of 1931. There a person who does any of the things specified in said definition in the carrying on of his business comes within the terms of the statute * * *. The person carrying on the business of a real estate broker or dealer need not do all the things mentioned as constituting or defining such broker within the limits of the city in order to become liable to the payment of an occupation tax therein."

Let judgment be entered for the defendants.