SAUL COPELLMAN, Plaintiff, v. DORIS RABINOWITZ et al., as Administrators C. T. A. of MILES RABINOWITZ, Deceased, et al., Defendants.

City Court of the City of New York, Trial Term, New York County, June 30, 1955.

*Joseph G. Abramson* and *Louis G. Abrams* for defendants.

*Harold A. Lipton* for plaintiff.

BAER, J. This action was tried before the court without a jury. Formal findings of fact and conclusions of law were waived.

Plaintiff is a real estate broker in Massachusetts and maintained an office in Boston for many years prior to the transaction involved in this litigation. No license was required in that State to act as a real estate broker and the court took judicial notice of that fact (Civ. Prac. Act, § 344-a).

During the year 1945, plaintiff and his assignor (a cobroker in Massachusetts who managed defendant's property) negotiated a twenty-year lease between the defendant owners of a parcel of land in Brockton, Massachusetts, and the Liggett Drug Company, Inc., of Boston, Massachusetts. The defendants resided and had their respective places of business in the city of New York. Most of the services of the plaintiff were rendered in Massachusetts but admittedly several important conferences took place in this city. Plaintiff came here to see one of the defendants and on at least two occasions brought the tenant's representative to see him. They obtained offers here from

defendants. The first offer was rejected by the tenant but at a meeting in New York City around the middle of April, 1945, the transaction was " practically closed ", subject to the approval of the tenant's officers in Boston. This was obtained and the attorneys worked out the lease which was signed on October 22, 1945, in Boston by the tenant and on October 25, 1945, by the landlord defendants in New York City. The brokerage agreement was preceded by some discussion and a prior arrangement which was rejected by plaintiff but on October 23, 1945, defendants forwarded from New York City a letter for approval in which they agreed to pay the commission, " which will be earned by you as and when said lease is executed by the landlord and the tenant and duly delivered ". They also provided that, " Said commission shall be in the amount of $6450. and shall be payable $3225. upon the execution and delivery of the lease as aforesaid and $3225. on the date when Liggett Drug Company, Inc., makes its first payment of minimum rent pursuant to the lease ". If defendants sold the property prior to the aforesaid payment, then such balance of payment was to be made, " immediately upon such conveyance." The plaintiff approved this letter and testified that he and his cobroker-assignor signed the approval in Boston and that the letter of agreement was mailed from there to the defendants in New York City.

Defendants paid $3,225 to plaintiff in early November, 1945. However, the tenant never occupied the leased premises and in December, 1949, the lease was cancelled and the tenant paid to the defendants $85,000 in consideration of such cancellation. Also, in May, 1946, the defendants transferred the property here involved to 122 Main Street Corp., a Massachusetts corporation in which defendants or their nominees were the sole stockholders, officers and directors. Plaintiff demanded the balance of commissions and payment was refused.

This lengthy recitation of facts serves the double purpose of clarifying the issues and setting forth the facts that I found from the testimony. Clearly on these facts the plaintiff would be entitled to an additional $3,225 if not precluded from recovery as a matter of law. Plaintiff " earned " his commission and only payment of one half was delayed until the happening of an event. It is unimportant whether the transfer to the corporation was a " sale " such as the agreement contemplated or whether the cancellation of the lease for $85,000 prevented the payment of the rent by the tenant. The balance of the commission was earned and should have been paid. (*Stern* v. *Gepo Realty Corp.*, 289 N. Y. 274; *Sibbald* v. *Bethlehem Iron Co.*, 83

N. Y. 378, 384; *Vandegrift* v. *Cowles Eng. Co.,* 161 N. Y. 435, 443.) This applies equally to a condition subsequent as in the case at bar. (*Meltzer* v. *Straus,* 61 Misc. 250; *Morgan* v. *Calvert,* 126 App. Div. 327.)

On the facts as I found them, plaintiff would recover if it were not for the defense of illegality urged by the defendants. The plaintiff was not licensed in the State of New York as a real estate broker at the time that he negotiated the lease in this city. The plaintiff contends that he performed most of his services in Massachusetts and did not need a license, relying on *Bitterman* v. *Schulman* (265 App. Div. 486). In that case a licensed New York broker negotiated for New Jersey property which was purchased by a New York resident pursuant to a brokerage contract made in this city. The court sustained the complaint because the brokerage contract was executed and suit was brought in this State by a licensed New York broker and our law rather than the New Jersey law was applied. However, the court did note (p. 488) that, " [a] real estate broker would be prohibited from recovering commissions * * * if the law of that State were to be applied ".

Also in *Aronson* v. *Carobine* (129 Misc. 800) the plaintiff recovered because he was licensed here and the parties resided here. Both cases stand for the proposition that the situs of the property does not control. (*Baird* v. *Hine,* 253 App. Div. 65.)

The plaintiff further urges that the brokerage contract was made in Massachusetts and therefore the law of that State should apply, again citing *Bitterman* v. *Schulman* (*supra*) and the cases therein cited. Ordinarily the validity and operation of a contract are governed by the law of the State where the contract is made. (*Stumpf* v. *Hallahan,* 101 App. Div. 383, affd. 185 N. Y. 550; *Vander Horst* v. *Kittredge,* 229 App. Div. 126, 131, 132.) This rule has been held to apply to a brokerage contract (*Aronson* v. *Carobine, supra*; 12 C. J. S., Brokers, § 67, n. 24). But, see, 12 C. J. S., Brokers, § 67, n. 27, and the New York cases cited thereunder.

" [A]n unlicensed person may not recover compensation * * * where a statute or ordinance requiring a license is applicable and * * * is of a regulatory nature, was enacted in the exercise of the police power for the purpose of protecting the public, requires a license as evidence of qualification and fitness, and expressly precludes an unlicensed person from recovering compensation by suit ". (12 C. J. S., Brokers, § 67.)

Our statute is in the nature of regulatory legislation. It prohibits suit in the courts of this State by an unlicensed broker

and the fact that the property is located elsewhere or the contract of brokerage made without the State is not controlling. See *Baird* v. *Hine* (*supra*) where the facts are almost identical to the case at bar. There, the unlicensed broker came from a community within the State where licenses were not required (prior to 1930 amendments of section 440-a of the Real Property Law). The property and owner who paid commissions were likewise in this community. A part of the negotiations took place in a city where the statute required licensing. The complaint to recover a penalty against the broker under subdivision 3 of section 442-e of the Real Property Law was sustained. The court pointed out that it was the performance of the acts of a broker which the statute forbade, when unlicensed. It did not matter where the property was located or that only a part of the transaction took place where the broker required a license.

The statute clearly provides: " No person, co-partnership or corporation shall engage in or follow the business or occupation of, or hold himself or itself out or act temporarily or otherwise as a real estate broker or real estate salesman in this state without first procuring a license therefor as provided in this article ". (Real Property Law, § 440-a.) "No person, copartnership or corporation shall bring or maintain an action in any court of this State for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose ". (Real Property Law, § 442-d.)

The courts have construed these sections strictly. In some instances they have said that a broker who, while unlicensed, " engaged in a single act " prohibited by the statute (Real Property Law, § 442-e) is guilty of a misdemeanor. (*Bendell* v. *De Dominicis,* 251 N. Y. 305, 309.) In the case at bar, substantial elements of the transaction admittedly took place in this city and the plaintiff is barred from recovery. (1930 Atty. Gen. 179; *Reed* v. *Watson,* 244 App. Div. 522; *Frankel* v. *Allied Mills,* 369 Ill. 578; *Gartrell* v. *Jennings,* 283 App. Div. 879, and other cases previously cited.)

It seems clear that the Legislature has seen fit to preclude a recovery in the courts of this State by unlicensed brokers who negotiate within the State. This may be harsh practice for brokers from other States but reciprocity has alleviated the hardship to some degree (Real Property Law, § 442-g). The legislative

intent to so regulate real estate brokerage is clear and any change must be sought in the Legislature, not in the courts.

Judgment for the defendants dismissing the complaint.

All motions on which decision was reserved, decided according to this opinion.

Ten days' stay, sixty days to make a case.