J. J. TANENBAUM, INDIVIDUALLY AND TRADING AS PROPERTY ANALYSIS ASSOCIATES, AND A. P. LEVIN, INC., A NEW JERSEY CORPORATION, PLAINTIFFS-APPELLANTS, v. SYLVAN BUILDERS, INC., FRANK JOY, Sr., AND FRANK JOY, Jr., DEFENDANTS-RESPONDENTS.

Argued December 15, 1958—Decided February 2, 1959.

64

*Mr. Sidney M. Schreiber* argued the cause for plaintiffs-appellants (*Messrs. Schreiber, Lancaster & Demos,* attorneys).

*Mr. George Dailey* argued the cause for defendants-respondents (*Messrs. Ferrara, Guez and Dailey,* attorneys).

The opinion of the court was delivered by
· FRANCIS, J. Plaintiffs are real estate brokers. J. J. Tanenbaum is licensed as such only in the State of New York; A. P. Levin, Inc., a New Jersey corporation, is licensed in this State. They brought suit charging that the defendants, by tortiously interfering with their prospective contractual advantage in connection with the sale of certain New Jersey realty, deprived them of commissions. The trial court entered summary judgment against Tanenbaum on the ground that he was barred from recovery under *N. J. S. A.* 45:15–1 *et seq.,* because he had no license in this State to act as a broker, and against Levin, Inc., because, having been engaged as co-broker by Tanenbaum alone, its rights could rise no higher than his. The Appellate Division

affirmed the judgment, 50 *N. J. Super.* 342 (*App. Div.* 1958), and we granted certification. 28 *N. J.* 32 (1958).

The motion for summary judgment was submitted on the pleadings, pretrial order, affidavits and depositions. Unfortunately, on motions of this type factual infirmities or ambiguities frequently appear on close study by an appellate tribunal and make necessary a remand for plenary trial. For this reason, the decisions on appeal have demanded the exercise of great caution and close scrutiny of the papers of the movant before a litigant is deprived of the conventional trial. See *Mayflower Industries v. Thor Corp.*, 15 *N. J. Super.* 139, 155–157 (*Ch. Div.* 1951), affirmed on opinion below, 9 *N. J.* 605 (1952); *C. B. Snyder Realty Co. v. Nat. Newark & Essex Banking Co.*, 14 *N. J.* 146, 155 (1953); *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N. J.* 67 (1954).

The complaint filed by the plaintiffs is in two counts. The first outlines the claim of Tanenbaum alone. It does not set forth his home address nor that of his place of business. The recital is limited to the statement that for many years he has been engaged in business as a realtor individually and as Property Analysis Associates. No allegation is made that he is a licensed real estate broker of New York or New Jersey. In view of the obvious relevancy of the licensing statute, *N. J. S. A.* 45:15–3, the allegations might well have been more specific. Proof on the motion disclosed the place of business to be in New York City but nowhere was it shown that Tanenbaum held a New York license (as required in that state, 49 *McKinney's Consolidated Laws of New York, Annotated, Real Property Law* § 440–a, p. 420 (1945)). The parties seem to have accepted the fact that he possessed such a license and we shall adopt that agreement. On the subject of a New Jersey license, it is admitted that he had none.

It is alleged and undisputed that Joseph G. Revicki, a New Jersey resident, was the owner of approximately 29 acres of land in Bergen County, New Jersey. The complaint charges also that Tanenbaum, acting as agent for

Revicki, produced one Benjamin Scher who executed a written contract to purchase the property at $7,000 per acre, and that Revicki agreed to pay a broker's commission for the services rendered. Tanenbaum concedes that the record is barren of any proof as to where or in which state he was first engaged to act for Revicki; and there is no allegation anywhere that the authorization was in writing as required by *N. J. S. A.* 25:1-9. Moreover, no evidence of any kind, actual or necessarily assumed because of the nature of the motion for summary judgment, either appears or was offered to show that Tanenbaum's services in procuring Scher, a New York resident, as buyer, were all performed in New York and that no material part or significant act thereof was engaged in in New Jersey. See *James v. Hiller,* 85 *Ariz.* 40, 330 *P. 2d* 999 *(Sup. Ct.* 1958); *St. Angel v. Schmid,* 4 *Ill. App. 2d* 113, 123 *N. E. 2d* 642 *(App. Ct.* 1955); *Cochran v. Ellsworth,* 126 *Cal. App. 2d* 429, 272 *P. 2d* 904 *(D. Ct. App.* 1954); *McGillivray v. Cronrath,* 48 *Idaho* 97, 279 *P.* 613 *(Sup. Ct.* 1929). The contract of sale between Revicki and Scher was drawn and executed in New Jersey. A rider attached thereto contained a clause recognizing Tanenbaum as the broker responsible for bringing the parties together and reciting that Revicki "by separate agreement * * * agrees to pay the brokerage commission as in said agreement is provided." The depositions make it clear that such separate document was drawn at the same time, also in New Jersey. But no copy of it was furnished to the trial court. The rider referred to certain further specified conditions to be performed and stipulated that if not accomplished, the purchaser at his option might abandon the project, in which event the "contract shall be null and void," and neither party would have any further obligation to the other. The depositions show that Tanenbaum was doing "the leg work" in New Jersey in connection with the fulfillment of some of these conditions.

The complaint goes on to assert that subsequent to the execution of the Revicki-Scher agreement but before closing of title, Scher engaged *Tanenbaum* and *A. P. Levin, Inc.*

to resell the property and he agreed to pay a 5% commission if they were successful. The pretrial order says, and for purposes of the motion it must be considered as admitted, that this authorization took place in New York. Tanenbaum alleged that acting pursuant to the authority he and Levin, Inc. obtained the defendants, Sylvan Builders, Inc., Frank Joy, Sr., and Frank Joy, Jr., as prospective purchasers and that thereafter the defendants falsely represented to Scher and Revicki that he and Levin, Inc. were not the brokers in the matter and that no dealings had been had with them. He alleged also that as the result of the false representations which were made for the purpose of defrauding plaintiffs of their commission *from Scher,* the contract between Revicki and Scher was rescinded and the defendants entered into a new agreement of purchase directly with Revicki for the sum of $228,000. In specifying in their brief the contractual arrangement and the advantageous relations emanating therefrom with which defendants tortiously interfered, plaintiffs say (as they charge in their complaint) that *it was the New York brokerage contract between Scher and Tanenbaum.*

Tanenbaum alleges in the first count that as a result of defendants' conduct, he was deprived of a commission of $13,338, to which he was entitled under the original Revicki-Scher contract. The second count is prosecuted by both Tanenbaum and Levin, Inc. jointly. They repeat the allegations of the first count and claim $11,000 as damages representing a 5% commission on the Revicki-defendants agreement of sale.

By a third-party complaint, the defendants brought in Scher and one Warren Mack, a New Jersey real estate broker, who had been recognized by Revicki and the defendants as the responsible agent in the transaction which finally resulted in the actual sale of the property. The pleadings with respect thereto do not appear in the appendix and there seems to be no need to consider them on this review.

As to the first count, defendants contend that since Tanenbaum was not a licensed New Jersey broker, he cannot main-

tain the action. The statute relied upon says, among other things:

"No person shall engage directly or indirectly in the business of a real estate broker \* \* \* temporarily or otherwise \* \* \* or represent himself as being authorized to \* \* \* engage in any of the activities described in section 45:15–3 of the Revised Statutes, without being licensed to do so as hereinafter provided." *N. J. S. A.* 45:15–1.

And section 3 provides:

"A real estate broker, for the purposes of this article, is defined to be a person \* \* \* who, for a \* \* \* commission \* \* \* or by reason of a promise or reasonable expectation thereof, lists for sale, sells \* \* \* or attempts to negotiate a sale \* \* \* or solicits for prospective purchasers or *assists* or directs in the procuring of prospects or the negotiation or closing of any transaction which does or is contemplated to result in the sale \* \* \* of any real estate \* \* \*.

*No person* \* \* \* *shall bring or maintain* any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article *without alleging and proving* that he was a duly licensed real estate broker at the time the alleged cause of action arose." *N. J. S. A.* 45:15–3 (emphasis added).

■ Of course, Tanenbaum did not and could not allege or prove that he was a licensed broker of this State during the period when he was acting in behalf of Revicki. Nor did he allege or prove any circumstances demonstrating the inapplicability of the statute. See *Levy v. Birnschein,* 206 *Wis.* 486, 240 *N. W.* 140 *(Sup. Ct.* 1932). Revicki was a New Jersey resident, the property is located here, the contract of sale was drawn and executed in this State, Tanenbaum's authority to negotiate the transaction was recognized therein and as the result of that recognition he obtained in this State the separate written memorandum of authority and the stipulation to pay commissions. He was not "entitled" to commissions regardless of other considerations until the`moment that writing was obtained and the Statute of Frauds, *N. J. S. A.* 25:1–9, thus satisfied. *Fontana v. Polish National Alliance of Brooklyn,* 130 *N. J. L.* 503

(*E. & A.* 1943). Further, as has been indicated, the depositions show that he did "leg work" attempting to work out the conditions to which the contract was subject. The full details of the negotiations conducted by him in New Jersey do not appear. But all of the circumstances alluded to are sufficiently significant and adequately implicatory to bring the matter within the ambit of the licensing statute. And nothing in the pleadings, pretrial order (the conference for which unfortunately was not used to advantage and so added little of value to the case), affidavits or depositions tends to show that Tanenbaum's activities in connection with the negotiations were not carried on in the county where the final concord was reached and executed. In short, there is nothing which would justify the conclusion that a factual issue existed as to the applicability of the bar of the statute.

The licensing act is a regulatory measure and represents the strong public policy of our State. *Stahl v. Township of Teaneck*, 162 *F. Supp.* 661 (*D. C. N. J.* 1958). Any "single act" in the execution of the authority to serve as broker in connection with the stimulation or consummation of a sale constitutes engaging in business and requires the actor to have a license. *N. J. S. A.* 45:15–2; *Corson v. Keane*, 4 *N. J.* 221, 227 (1950); *Bendell v. De Dominicis*, 251 *N. Y.* 305, 167 *N. E.* 452, 453 (*Ct. App.* 1929). For example, arranging for a prospective buyer to inspect the property brings the mandate into operation. *Campbell v. Duncan*, 84 *F. Supp.* 732 (*D. C. E. D. Ark.* 1949). Moreover, a person violating the statute is subject to a monetary penalty and to commitment on failure to pay it. *N. J. S. A.* 45:15–23, 24. But Tanenbaum argues that even if he cannot recover commissions from Revicki, the bar should not extend to his claim against a third person who tortiously interfered with realization of the pecuniary advantages earned under the brokerage agreement. In our judgment, however, the legislative objective in closing the courts to the unlicensed broker was to establish a policy so strong that neither the contract nor the unlawful efforts made in its pursuit could provide the basis of pecuniary benefit to him even in tort

claims of the character alleged in this proceeding. Accordingly, we are of the opinion that summary judgment for the defendants on the first count was properly granted.

Thus we reach the second count of the complaint about which most of the argument seems to center. The trial court and the Appellate Division took the view that the uncontradicted proof revealed that Tanenbaum individually and on his own engaged Levin, Inc. to assist him in the search for a purchaser and that Levin, Inc. had no authority from or agreement with Scher to act as broker. The conclusion stemmed from a statement in the affidavit of Alfred P. Levin, president of plaintiff corporation, that Tanenbaum had requested assistance of him in finding a buyer for the land which was under contract of sale to Scher. Because there was no assertion of engagement of Levin, Inc. by Scher, it was thought that since Tanenbaum could not recover, neither could Levin, Inc., whose authority to act proceeded from him and whose rights therefore could not rise any higher than his. But a facet of the complaint was overlooked. It is the allegation that Scher engaged *Tanenbaum* and *Levin, Inc.* to resell the property and agreed to pay *them* a commission, if they procured a buyer. Nowhere is there any denial of the assertion. The pretrial order glides over it without any reference beyond the statement that "Tanenbaum with the assistance of A. P. Levin, Inc." interested the defendants and negotiated with them. Undoubtedly, proper attention to this issue at the conference would not only have simplified the problem presented on the motion for summary judgment but in all likelihood would have avoided the review in the Appellate Division and in this Court.

██ In the state of the proof, the allegation of hiring of both plaintiffs by Scher must be treated as true. Consequently, the influence of that assumed fact on the rights of the parties must be assayed. Another item necessarily accepted on the motion is that the Scher-Tanenbaum brokerage contract was made in New York. Where and under what circumstances Scher gave Levin, Inc. authority to

act was not developed. The New York contract was valid; in fact, unlike in New Jersey no written authorization is required, even with respect to an owner-seller. *Grossman v. Greenspan*, 172 *N. Y. S.* 343 (*Sup. Ct. App. Term* 1918). Ordinarily, the validity of a brokerage contract, like any other compact, is determined by the law of the place where made. *Yoerg v. Northern New Jersey Mtg. Associates*, 44 *N. J. Super.* 286, 292 (*App. Div.* 1957). But the remedy for breach thereof is governed by the law of the forum. And a foreign contract of that type is not enforceable in the forum state if performance thereof, wholly or in material part, consists of acts engaged in in that state contrary to its strong public policy which demands that the actor be licensed as a condition to such activity and to his assertion of a claim thereon. *Corson v. Keane, supra,* 4 *N. J.* at page 227; *Yoerg v. Northern New Jersey Mtg. Associates, supra; Stahl v. Township of Teaneck, supra; Reed v. Kelly,* 177 *F. 2d* 473 (7 *Cir.* 1949); *Campbell v. Duncan, supra; Pearce, Mayer & Greer v. Williams,* 147 *N. E. 2d* 866 (*Ohio C. Pl.* 1957); *Copellman v. Rabinowitz,* 208 *Misc.* 274, 143 *N. Y. S. 2d* 496 (*City Ct.* 1955).

In *Reed v. Kelly* the Seventh Circuit, in discussing a situation quite analogous to the present one, said:

"It is true \* \* \* that the *lex loci* governs as to the validity of contracts, but this rule is subordinate to and is qualified by the doctrine that neither by comity nor by the will of the contracting parties can the public policy of a State be set at naught. *The Kensington,* 183 *U. S.* 263, 269, 22 *S. Ct.* 102, 46 *L. Ed.* 190. A State may refuse to enforce a contract which provides for doing within it an act prohibited by its laws. *Bothwell v. Buckbee Mears Co.,* 275 *U. S.* 274, 278, 48 *S. Ct.* 124, 72 *L. Ed.* 277. And in an action to enforce a remedy, the law of the forum applies and not the law of the place of the making or performance of the contract. *Scudder v. Union National Bank,* 91 *U. S.* 406, 413, 23 *L. Ed.* 245. That is to say, a citizen of one State cannot use the courts of a sister State to prosecute his cause of action in a manner contrary to the laws of the forum \* \* \*." [177 *F. 2d* 475]

The record is clear that Tanenbaum took an active part in the negotiations in New Jersey looking toward the sale

to the Joys and Sylvan Builders. Although the brokerage agreement (at least to the extent disclosed) did not specify the doing of any particular acts in New Jersey, manifestly they were reasonably in the contemplation of the parties as within its scope. And plainly in performing those acts he violated the intention of our Legislature "to close avenues to the unlicensed participation in the business of real estate brokerage." *Corson v. Keane, supra* (4 *N. J.*, at *page 227*).

One purpose of the statute was to "mark off 'the business of the broker as distinct from occupations which by the general acquiescence are pursued of common right without regulation or restriction,' and to make illegal the acts of the unlicensed in the real estate broker's field." *Bendell v. De Dominicis, supra* (167 *N. E.*, at *page 453*). On account of the reciprocal provisions of the statutes of New York and New Jersey, it is a relatively simple matter for a broker of the former to obtain a license in this State. *N. J. S. A.* 45:15–20; *McKinney, supra*, § 442–g, *p. 447*. And since our law-makers have declared that a single act by an unlicensed broker constitutes engaging in the brokerage business, the course of the non-resident who intends to negotiate or to participate here in negotiations for the sale of New Jersey real estate is plain.

Under all of the circumstances present, we hold the view that maintenance of an action by Tanenbaum on the brokerage contract would be violative of our strong public policy. And for the same basic reason his action arising from the alleged tortious frustration of prospective advantages flowing therefrom cannot be sustained. To do so would be to lend aid to a circumvention of that policy. Accordingly, we concur in the action of the Appellate Division in denying Tanenbaum access to our courts on the second count.

What of the claim of Levin, Inc? In the present state of things, that company, a licensed New Jersey broker, had a valid brokerage contract under which it allegedly produced the defendants as buyers, and it is charged that the defendants by their misrepresentation prevented the

consummation of a contract of sale. There seems to be no sound reason why this plaintiff's efforts should be regarded as so tainted by the association or even participation in negotiations with Tanenbaum as to preclude recovery of *its* share of the commissions as an element of damage arising from the pleaded tort. (The only damage claim made is for loss of commission.) Limitation of the amount in this fashion is the only course consistent with the broad local licensing policy. Such view is strengthened by another aspect of our statute. Section 17 provides that the New Jersey Real Estate Commission may revoke a broker's license for "Paying any * * * compensation or commission to anyone not possessed of a real estate license" or for "Accepting a commission or valuable consideration as a real estate salesman for the performance of any of the acts specified in this act, from any person, except his employing broker, who must be a licensed broker * * *." *N. J. S. A.* 45:15–17(*k*) and (*m*). It may seem inequitable in some instances to deny an out-of-state broker a share of the commissions where he participates in good faith with a New Jersey broker in negotiations here for the sale of local real estate. Note that the splitting of commissions with a licensed out-of-state broker is sanctioned in New York. *McKinney, supra,* § 442, *p.* 437. But all such policy considerations are assigned to the legislative branch of our triaded form of government and are beyond the jurisdiction of the judiciary. And, of course, we express no opinion on any cause of action Tanenbaum may have against Scher in New York.

Finally, it is suggested by the defendants in support of their judgment that the mandate of the statute of frauds, *N. J. S. A.* 25:1–9, for a written brokerage retainer stands in the way of the prosecution of Levin, Inc.'s action. But Scher is not an owner of property within the meaning of the provision; and, in any event, a wrongdoer may not utilize the statute to defeat this type of cause of action. *Louis Kamm, Inc. v. Flink,* 113 *N. J. L.* 582, 591 (*E. & A.* 1934); *McCue v. Deppert,* 21 *N. J. Super.* 591, 596 (*App.*

76

*Div.* 1952) ; but compare, *Snyder Realty Co. v. National Newark & Essex Banking Co., supra.*

 On study of all of the evidence, actual and necessarily assumed, now disclosed in the record, it does not appear palpably that there is no genuine issue of fact as to the employment of Levin, Inc. by Scher. Therefore, the claim of that plaintiff should have been held for plenary trial. Accordingly, the summary judgment in favor of defendants is modified to permit such trial; in all other respects it is affirmed.

HEHER, J. (concurring in reversal). I would allow recovery, if the pleaded cause of action be sustained, on the hypothesis of a full commission earned by the plaintiff A. P. Levin, Inc., and would reverse the judgment and remand the cause for proceedings accordingly.

*For modification*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance and reversal*—Justice HEHER—1.