388 F.2d 208
 LOUIS SCHLESINGER COMPANY, a Corporation of New Jersey, Appellant,
v.
The KRESGE FOUNDATION, a Michigan Corporation and Kresge
Department Store,Inc., a Delaware Corporation.
 No. 16502.
 United States Court of Appeals Third Circuit.
 Argued Oct. 16, 1967.
Decided Jan. 12, 1968.
 
 Stanley Stern, Robert S. Greenbaum, Greenbaum, Greenbaum & Rowe, Newark, N.J., for appellant.
 Julius B. Poppinga, McCarter & English, Newark, N.J., (Julius B. Poppinga, Robert P. Douglass, John R. Drosdick, Newark, N.J., on the brief), for appellee.
 Before HASTIE, FREEDMAN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 FREEDMAN, Circuit Judge.
 
 
 1
 Appellant, Louis Schlesinger Company, a New Jersey corporation licensed as a real estate broker in New Jersey, brought this action against The Kresge Foundation, a Michigan corporation, for additional commissions because the tenant it procured for the Foundation's department store building at 715 Broad Street, Newark, New Jersey, later extended its term of occupancy and acquired additional space in the building.
 
 
 2
 In 1956 plaintiff brought Western Electric Company to the attention of defendant as a prospective tenant in the building. Before the terms of a lease were fully agreed upon a controversy arose regarding plaintiff's commission. Plaintiff claimed the full commissions customarily paid in Newark, and defendant maintained that plaintiff was only entitled to a finder's fee because it had suggested the name of the prospective tenant. Discussions ensued between the parties in Newark and also by telephone and correspondence between Newark and Detroit. They resulted in the execution of a letter agreement dated December 12, 1956, but actually executed December 31, 1956, which provided for the terms of payment of plaintiff's commission.
 
 
 3
 Thereafter a lease between defendant and Western Electric Company was executed on February 15, 1957, which provided for the rental of two floors of the building for a term of ten years, and granted the lessee an option to renew for an additional five years and a right of first refusal fo any additional space which became available during the term of the lease. A short time later, on April 12, 1957, defendant paid to plaintiff a commission in accordance with the letter agreement in the amount of $81,552.27.
 
 
 4
 The present controversy arose out of defendant's new lease to Western, dated June 9, 1964, before the expiration of the original ten year term. The new lease was for the original two floors and and three additional floors of the building, for a term of five years, and required major rehabilitation and alteration of the demised premises at a cost of more than one million dollars.
 
 
 5
 Plaintiff, learning of the negotiations between defendant and Western for the additional space, gave notice of its claim for commission and after the new lease was executed brought suit in the Superior Court of New Jersey. Defendant removed the suit to the United States District Court for the District of New Jersey on the ground of diversity of citizenship.
 
 
 6
 The district court on consideration of extensive depositions and affidavits of the parties entered summary judgment for defendant and dismissed the complaint.[1] The court held:
 
 
 7
 (1) The letter agreement was executed in Michigan and the statute of frauds of that state[2] applied and barred the suit because the letter agreement did not contain all the terms agreed upon but made reference instead to the rates and rules of the Detroit Real Estate Board.
 
 
 8
 (2) The letter agreement required the payment of only one commission and did not justify a subsequent commission.
 
 
 9
 (3) In any event the payment of the original commission constituted an accord and satisfaction between the parties which barred the present action.
 
 
 10
 As a result of these views the district court did not pass upon the defenses that even if plaintiff's interpretation of the brokerage agreement was correct, the new lease did not fall within its terms; and that plaintiff was barred from recovery of commissions in New Jersey because it was not licensed as a real estate broker in Michigan.
 
 I.
 
 11
 The vital part of the agreement, which is in the form of a letter from plaintiff, accepted by defendant, reads as follows: 'Louis Schlesinger Company will accept and The Kresge Foundation * * * will pay the real estate commission in accordance with the rates and rules published by the Detroit (Michigan) Real Estate Board, payable in the event of a closed lease with the Western Electric Company, said commission to be due and payable upon execution of the lease.'
 
 
 12
 The applicability of the Michigan statute of frauds may well depend on the circumstances surrounding the execution of the agreement. But even if the Michigan statute of frauds applies, there is no reason why the written rates and rules of the Detroit Real Estate Board which the letter agreement incorporated by reference should be rejected as not part of the agreement. A signed writing which clearly and unmistakably refers to an extraneous document which is incorporated in it by reference satisfies the Michigan statute of frauds.[3] This is also the general law in the United States.[4]
 
 II.
 
 13
 Since the statute of frauds is not a bar to the plaintiff's action, we turn to the defense of accord and satisfaction.
 
 
 14
 There is nothing in the facts of record to show that any payment was made to plaintiff in settlement of the current dispute. Indeed, the transaction which gave rise to it had not yet come into existence when the payment of $81,552.27 was made. The payment was made under the letter agreement in satisfaction of plaintiff's claim for commission on the original lease.
 
 
 15
 It is the universal rule in this country, including Michigan and New Jersey, that an accord and satisfaction arises only where both parties intend the payment to terminate a then existing controversy.[5] This defense, therefore, is inadequate.
 
 III.
 
 16
 The final ground of the decision of the district court was its interpretation of the letter agreement as providing for only one commission which was the commission which fell due under the original lease. The court arrived at this conclusion by emphasizing that plaintiff did not include in the letter agreement an explicit provision for a commission on renewal, and considered that it was the clear intention of the parties to use the Detroit rates and rules only as a formula for fixing the amount of commission due at the time of execution of the original lease.
 
 
 17
 As we have already indicated, the agreement must be read to include the rates and rules of the Detroit Real Estate Board which it incorporated by reference. They not only fix a schedule of rates, but also establish a series of rules. The rules equally with the rates are made part of the letter agreement and include the following provision:
 
 
 18
 'LEASE WITH PRIVILEGE OF RENEWAL '(e) Where lessee avails himself of privilege of renewal or extension of lease, or takes on additional space under provisions of original lease, the negotiating broker shall be entitled to additional compensation at same rates as applied to original case, when and as said lessee avails himself of such privileges.'[6]
 
 
 19
 The question therefore arises whether the new lease by defendant to Western fell within rule (e) of the Detroit Real Estate Board. If it did, plaintiff would be entitled to an additional commission on the new lease. Because of its view that rule (e) was not incorporated in the letter agreement the district court did not determine whether the new lease for the enlarged space constituted lessee's availing itself of the 'privilege of renewal or extension' of the original lease, or the taking on of 'additional space under (the) provisions of (the) original lease,' which by virtue of rule (e) would entitle plaintiff to additional compensation at the rates which applied to the original lease. The decision of this question must be made in the light of the provisions of P3 of the original lease, which granted to the lessee an 'option to renew' the lease for an additional period of five years and also conferred on the lessee 'the right of first refusal, to rent any other space in the building,' which was available for leasing and had become vacant during the term of the lease.[7] The parties to the original lease 'terminated' it when they executed the new lease for the enlarged space.
 
 
 20
 Accordingly, there is presented a factual question whether the new lease terminating the old lease and giving the tenant additional space in the building for a term of different length at a different rent and requiring substantial improvements to be made on the property, considered in the light of the provisions of P3 of the original lease, fell within the Detroit Real Estate Board's rule (e). This ultimate factual issue was not decided. We cannot resolve the question simply by placing the new lease, in the form in which the lessor and lessee cast it, alongside of rule (e) and seeing if the language of one matches the other. It is from the nature of the transaction itself and the circumstances which surround it, which will disclose the reality of the action of the parties and the intention with which they documented their transaction in the form it ultimately took, that this factual question must find its answer.
 
 
 21
 While the depositions and affidavits have presented many facts which are not in dispute, yet the ultimate inferences to be drawn from these facts are the essence of the controversy which has ignited this litigation. Without findings of fact on the inferences which are to be drawn from the circumstances as well as from the documents there is no foundation on which to rest a judgment whether plaintiff's claim is well-founded.
 
 
 22
 What seems to be a question of law as to the right of a broker to additional compensation on the renewal or extension of the lease for which he was the procuring agent is a matter which is not free from difficulty.[8] It is brought to the courts most frequently where the subsequent conduct of the owner and tenant is molded in a form which does not on its face establish liability for additional commission. It is evident in such cases that the interest of the parties to the lease lies in avoiding the obligation to pay additional commission and from this arises at once the factual question whether what is otherwise described by the owner and lessee is in reality a transaction which falls within the language of the real estate broker's contract with the owner. Here the circumstances which surrounded the making of the new lease which terminated the original lease must be considered in making the factual determination whether the new lease fell within rule (e) of the Detroit Real Estate Board. The determination of this question requires consideration of the intention of the parties as derived from their conduct, and the inferences which are to be drawn from their intention. The depositions already reveal that the core of the dispute contains a sharp contradiction between the parties.
 
 
 23
 Summary judgment is not an appropriate instrumentality to determine factual intention and inferences. See Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).[9] It is inappropriate in the circumstances of the present case.
 
 IV.
 
 24
 The effect of the Michigan statute /10/ making unlicensed real estate brokerage transactions illegal and the doctrine of that state rendering such contracts unenforceable,[11] which the district court did not decide, will be reached if the plaintiff's claim is otherwise established. The Michigan courts have not yet had occasion to decide whether they would extend the rule to cases such as this, which involves the activity of a broker duly licensed in New Jersey, in relation to real estate situated in New Jersey. There will be involved also the question whether the New Jersey courts would apply any Michigan sanction of unenforceability to a transaction such as this.[12] This question is entangled in the precise details of the broker's activities and where they occurred, and therefore the factual circumstances will lend their coloration to the legal question which may require decision.
 
 
 25
 It follows that the summary judgment for defendant and the dismissal of the complaint must be set aside so that the case may proceed to trial.
 
 
 26
 The judgment will be vacated and the cause remanded for further proceedings.
 
 
 
 [1]
 260 F.Supp. 763 (D.N.J.1966). The district court had earlier denied defendant's motion to dismiss for technical inadequacies in the form of the complaint in the New Jersey court, 236 F.Supp. 373 (D.N.J.1964). We agree with this holding
 
 
 [2]
 Mich.Stat.Annot.Rev.1953, 26.922 (Comp.Laws Mich.1948, 566.132)
 
 
 [3]
 Janiszewski v. Shank, 230 Mich. 189, 202 N.W. 949 (1925); Beltsman v. Sherman, 224 Mich. 347, 194 N.W. 1003 (1923); see also Annot., Admissibility of Parol Evidence to Connect Signed and Unsigned Documents relied upon as Memorandum to Satisfy Statute of Frauds, 81 A.L.R.2d 991 (1960)
 
 
 [4]
 2 Corbin on Contracts, 527 (1950)
 
 
 [5]
 See Durkin v. Everhot Heater Co., 266 Mich. 508, 254 N.W. 187 (1934); Kissell v. Myer & Bush Co., 96 N.J.L. 513, 115 A. 378 (1921); 6 Corbin on Contracts, 1277 (1962)
 
 
 [6]
 Other provisions which bear on our problem although less directly, are the following:
 '(f) On leases bearing a cancellation clause, the broker shall be entitled to compensation at regular rates, based upon the full term of the lease.
 '(j) On leases containing option to purchase, exercised on or before ten (10) years, the commission on the sale shall be payable when the option to purchase is exercised, whether or not the purchase is made exactly on the terms stipulated in the lease, and shall be the regular rate for negotiating the sale of the property in question, less the unearned commission for the unexpired portion of the lease, but in no event shall it be less than the commission for negotiating the lease.'
 
 
 [7]
 The provision reads as follows: 'The lessee shall have the option to renew this lease for an additional period of five years upon the same terms and conditions upon written notice (etc.). * * * The lessor shall offer first to the lessee, which shall have the right of first refusal, to rent any other space in the building, and available for leasing, of which the demised space is a part, which may become vacant during the term of this lease at a rental to be agreed upon by the parties.'
 
 
 [8]
 See Annot., Broker's Right to Commission on Renewal, Extension, or Renegotiation of Lease, 79 A.L.R.2d 1063 (1961)
 
 
 [9]
 See also Severson v. Fleck, 251 F.2d 920 (8 Cir. 1958); Cram v. Sun Insurance Office, Ltd., 375 F.2d 670, 673 (4 Cir. 1967)
 
 
 [10]
 Mich.Stat.Annot.Rev.1953, 19.791-19.793, (Comp.Laws 1948, 451.201-451.203)
 
 
 [11]
 Jaenicke v. Davidson, 290 Mich. 298, 287 N.W. 472 (1939); Krause v. Boraks, 341 Mich. 149, 67 N.W.2d 202 (1954)
 
 
 [12]
 Compare Tanenbaum v. Sylvan Builders, Inc., 29 N.J. 63, 148 A.2d 176 (1959)