**C. B. SNYDER REALTY CO.**

v.

**SHERRILL–NOONAN, INC., Appellant,**
and
**York-Hoover Corporation and H. W. Stone.**

No. 12521.

United States Court of Appeals
Third Circuit.

Argued Oct. 8, 1958.

Decided Nov. 14, 1958.

Robert H. Griffith, York, Pa. (Arthur Markowitz and Wm. W. Wogan, York, Pa., on the brief), for appellant.

Samuel H. Landy, Philadelphia, Pa. (Martin J. Vigderman, Freedman, Landy & Lorry, Philadelphia, Pa., Wilhelm E. Shissler, Nauman, Smith, Shissler & Hall, Harrisburg, Pa., on the brief), for plaintiff and third-party plaintiff.

Albert G. Blakey, III, York, Pa. (Norman R. Olewiler, York, Pa., Fisher, Ports, May & Beers, York, Pa., on the brief), for respondents, York-Hoover Corporation and H. W. Stone.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This case is essentially two cases by reason of the permissive counterclaim interposed by the defendant in the original action. Jurisdiction is based on diversity of citizenship.

## I.

In 1953 Sherrill-Noonan, a Pennsylvania corporation, defendant-appellant, owned some real estate in Exmore, Virginia, which it desired to sell. It engaged C. B. Snyder Realty Company, a New Jersey corporation and plaintiff-appellee, to find a buyer, agreeing to pay a 2½% commission on the sale price should a buyer be produced. Snyder presented a buyer to Sherrill-Noonan in New York to whom the sale was ultimately made. Dispute over whether certain conditions had been subsequently attached to the earning of the commission was resolved against Sherrill-Noonan at a jury trial wherein a verdict for $8,250 with interest was returned for Snyder.

Sherrill-Noonan appeals from the trial court's refusal to enter a dismissal at the close of the plaintiff's case under Rule 41(b), F.R.Civ.P., 28 U.S.C.A., and from the refusal to set aside the verdict and enter judgment for it under Rule 50(b), F.R.Civ.P., thereby presenting the question of whether the Pennsylvania Real Estate Broker's License Act prevents recovery.

 It can be seen from the relevant portion of the Act appearing in the margin [1] that it is expressed in terms which require it to be applied by the Pennsylvania courts whenever they are the forum for an action for broker's commissions. The statute affects the availability of remedy and can consequently be said to be procedural. Goodrich on Conflict of Laws, § 77. Indeed, if the statute were construed to affect the establishment of contractual relationships or to affect the right to assert a claim upon the breach of a right or duty already conferred by contract, the statute would not be applicable here at all. In each of those situations, where the contract involved has been entered in one state and is to be performed in another, it is not entirely clear whether the Pennsylvania conflict of laws rule would apply the law of the place of contracting or of the place of performance. See Linn v. Employers Reinsurance Corp., 1958, 392

1. P.L. 1216, May 1, 1929, § 16, 63 P.S. § 446, as amended, reads:

"No action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person, copartnership, association or corporation was duly licensed hereunder as real estate broker (sic) at the time of the doing of such act or the rendering of such service."

Pa. 58, 139 A.2d 638; Musser v. Stauffer, 1899, 192 Pa. 398, 43 A. 1018. But see Burnett v. Pennsylvania R. Co., 1896, 176 Pa. 45, 34 A. 972. It is clear, however, that where the place of contracting and of performance are the same, the law of that place will be applied. See, In re McCurdy's Estate, 1931, 303 Pa. 453, 154 A. 707; Rumsey v. New York & Pennsylvania R. Co., 1902, 203 Pa. 579, 53 A. 495. Here the places of contracting and of performance were both New York. Consequently it is the law of New York which determines the rights of the parties as distinguished from the remedies once such rights exist. See Goodrich, supra.

■ In order to avoid the possibility of divergent results turning on whether the action was brought in a federal or a state court, a federal court in a diversity action must apply that law of its state which would prevent recovery otherwise available. See e. g., Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

Turning to a close consideration of 63 P.S. § 446, supra, it is plain that recovery is not barred if the plaintiff corporation is licensed as a broker under the Act, nor is recovery barred even if the corporation is not licensed so long as the actions or service for which recovery is sought are not actions prohibited by the Act. There is plain evidence in the record that the corporate plaintiff was licensed in Pennsylvania after the usual form in which brokers' licenses were issued to corporations. Furthermore, the only pertinent prohibition we find in the Act is in § 12, 63 P.S. § 442, as amended. That reads:

"Any person, copartnership, association, or corporation, who shall * * * engage in or carry on the business, or act in the capacity of a real estate broker, or a real estate salesman, *within this Commonwealth,* without a license * * * or shall employ any person as a real estate salesman, to whom a license as a real estate salesman has not been issued * * * shall be deemed guilty of a misdemeanor * * *." (Emphasis supplied.)

■ Although the statute explicitly prohibits nothing, it is clear that the proscription of the acts mentioned amounts to a prohibition. But if Snyder did not perform any of its broker's activity in Pennsylvania in connection with the transaction on which recovery is now sought, it did nothing prohibited by the Act. The evidence is quite clear that the activity occurred in New York and possibly New Jersey. And even if some of the activity had occurred in Pennsylvania, it is irrelevant whether or not the agent who actually represented Snyder Company was licensed in Pennsylvania because, though employment of an unlicensed salesman may be prohibited by § 442, the employment is not the act upon which recovery is sought. The language of § 446 requires that the very act for which compensation is sought be the one prohibited. For these reasons the Pennsylvania Real Estate Broker's License Act is not a bar to Snyder's recovery in this case.

■ We need not stop to explore whether the license laws of New York might not have given Snyder any right against Sherrill-Noonan after the latter failed to pay a commission for the production of a buyer; this was an affirmative defense which the defendant was required to plead under Rule 8(c), F.R.Civ. P. The failure to plead and offer proof on this phase of the case constituted a waiver of whatever defense might possibly have been available under the New York statutes.

■ Sherrill-Noonan complains also of admission to evidence of a letter written by its attorney to Snyder which Sherrill-Noonan claims was unauthorized; being unauthorized it could not, according to the argument, have been a vicarious admission which despite being hearsay would then have been admissible. But the letter actually was placed into evidence after earlier objections of a different nature were withdrawn; this new objection could not thereafter be "reinstated" as Sherrill-Noonan's trial

counsel attempted to do. Such a procedure would utterly confound the orderly conduct of a trial in its attempt to ascertain the facts of a transaction or of an occurrence. The point is without merit.

■ Sherrill-Noonan's last point in this case is that the court erred in failing to instruct the jury that they had a choice of returning a verdict of either $5,000, plus interest or of $8,250, plus interest. This objection is not open to Sherrill-Noonan since it failed to comply with Rule 51, F.R.Civ.P., by raising the point before the jury retired. But even if objection had been timely made, the record demonstrates that the trial judge was correct in intentionally omitting a charge as to the possibility of a $5,000 verdict, since the evidence in the record would not support such a verdict.

## II.

The facts underlying Sherrill-Noonan's independent counterclaim against Snyder are that one of Sherrill-Noonan's officers introduced an officer of Snyder to H. W. Stone, president of York-Hoover Corporation. The latter corporation had some Pennsylvania realty which it wished to sell. At a meeting in Pennsylvania between the three officers of the three corporations, Snyder obtained a written thirty-day listing agreement to sell the York-Hoover real estate at a 5% commission. It is disputed whether there was an agreement that Sherrill-Noonan should receive half of any commission realized. Shortly after the agreement between Snyder and York-Hoover was entered, York-Hoover paid Snyder $15,000 in return for a release from the thirty-day listing contract and agreed to indemnify Snyder against any claim by Sherrill-Noonan. Upon Sherrill-Noonan's filing this counterclaim for $7,500 Snyder impleaded York-Hoover and Stone.

■ At the close of Sherrill-Noonan's case, the trial judge directed a verdict in favor of Snyder, York-Hoover and Stone on the alternative grounds that either Sherrill-Noonan could not recover any broker's commission since it was unlicensed in Pennsylvania, or, if this were not in fact an action for recovery of a commission, then it was not within the contemplation of any agreement that might have existed between the parties. The judgment in Stone's favor was entered also on the ground that there was insufficient evidence to warrant a verdict against him.

The exclusive listing agreement granted by York-Hoover was valuable to Snyder because of the possibility it afforded for earning a commission. The release from the agreement was obtained upon payment to Snyder of an amount representing the value of Snyder's expectant commission. If there really was a commission-splitting agreement between Snyder and Sherrill-Noonan, it cannot be said that the parties intended to split any payment made in lieu of a commission; it cannot be said simply because it is apparent that they never thought of the possibility. If they had, it is more probable than not that the considerations determinative in agreeing to the split of a commission would also have been similarly determinative in agreeing to a division of any payment in lieu of a commission. Fairness in interpreting the alleged agreement would seem to require that this action be treated as one for the recovery of a commission and that it not be barred as being for the recovery of other than a commission.

■ The question left for decision, then, is whether Sherrill-Noonan would be barred from recovery by § 16 of the Pennsylvania Real Estate Broker's License Act, 63 P.S. § 446 and the other sections of the Act which § 16 incorporates even if a trier of fact determined that there was an extant fee-splitting agreement between Sherrill-Noonan and Snyder.

The act or service rendered in return for such agreement was the "finding" of a listing for Snyder. Is this an act or service which § 12, 63 P.S. § 442, prohibits to all but licensed brokers? That section prohibits engaging in or carrying on the business of a real estate broker

in Pennsylvania without a license. 63 P.S. § 432(a) defines a real estate broker in the terms quoted in the margin.[2] Nowhere in this lengthy definition (some of which is omitted as immaterial here) is a broker defined as one who receives a commission for taking a broker to a seller who consequently lists with the broker the property to be sold.

We have been directed to no Pennsylvania opinion which reads the statute so as to make the recipient of a "finders" fee a broker who, if he is to recover his claimed fee in an action at law in the Pennsylvania courts, must be licensed. Alford v. Raschiatore, 1949, 163 Pa. Super. 635, 63 A.2d 366, involved an action by an unlicensed plaintiff against the seller on a contract for commission for finding a buyer for the property. The court held that this constituted a negotiation of the sale which made the plaintiff a broker within the meaning of the statute. That situation, however, is readily distinguishable from the instant facts; there the plaintiff brought the buyer and seller together by introducing them with the proposed sale in mind which, as the court pointed out, is no less than all that brokers often do. Here Sherrill-Noonan never dealt and never attempted to deal with a prospective buyer.

The application of the Broker's Act to this issue could perhaps be supported by regarding as a step in the negotiation of a sale any act done which eventually leads to a sale of property. It is doubtful however that the Alford case can properly be taken as manifesting a trend in the Pennsylvania law toward so extremely broad a definition of the term "negotiate" as it appears in the Broker's Act. Lacking a clear mandate to such a trend,

it is the better course for the federal courts to hold that the Broker's Act does not bar maintenance of Sherrill-Noonan's counterclaim. Cf. Schultz v. Palmer-Welloct Tool Corp., 3 Cir., 1953, 207 F. 2d 652.

The judgment on Snyder's claim against Sherrill-Noonan will be affirmed. The judgment on Sherrill-Noonan's claim against Snyder will be reversed and remanded; judgment on Snyder's claim over against York-Hoover will likewise be reversed and remanded. The judgment in Snyder's claim over against Stone will be affirmed, there being no evidence to support a verdict against that third party.

2. "The term 'real estate broker' shall include all persons * * * who, for another and for a fee, commission, or other valuable consideration, shall sell, exchange, purchase, or rent, or shall negotiate the sale, exchange, purchase or rental, or shall offer or attempt to negotiate the sale, exchange, purchase or rental, or shall hold himself * * * out as engaged in the business of selling, exchanging, purchasing, or renting of any real estate. * * * One act in consideration of compensation, by fee, commission or otherwise, of buying, selling, renting or exchanging any such real estate of or for another, or attempting or offering so to do, * * * shall constitute prima facie evidence that the person * * * is a real estate broker within the meaning of this act."