**Edward PAULSON, Plaintiff-Appellant,**

v.

**Michael SHAPIRO et al., Defendants-Appellees.**

No. 72–1368.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1973.

Decided Dec. 4, 1973.

1

**2**

---

Roger B. Harris, Chicago, Ill., for plaintiff-appellant.

Irving D. Gaines, David A. Saichek, Milwaukee, Wis., for defendants-appellees.

Before PELL and STEVENS, Circuit Judges and CAMPBELL, Senior District Judge.*

CAMPBELL, Senior District Judge.

Edward Paulson appeals from orders granting defendants' motion for summary judgment and denying plaintiff's motion to vacate said judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The record below consists of the pleadings, affidavits filed by the parties and their attorneys in support of their respective motions, and portions of the deposition of plaintiff-appellant, Edward Paulson. We reverse.

Plaintiff Edward Paulson (PLAINTIFF) is a resident of Illinois. He is a real estate broker and consultant, licensed as such in Illinois, with offices located in Chicago. He is not licensed as a real estate broker in Wisconsin.

Defendant Michael Shapiro (SHAPIRO) is a resident of Wisconsin. He is the president of defendant International Trading Co. and a partner in defendant Millroad Enterprises. Defendant International Trading Co. (ITC) is a Wisconsin corporation with its principal offices in Milwaukee, and is alleged to have been the owner of a certain parcel of real estate located at North Sixth Street and Wisconsin Avenue, Milwaukee, Wisconsin (hereafter, "Sixth Street Property"). Defendant Millroad Enterprises (MILLROAD) is a partnership, the principal offices of which are located in Milwaukee, Wisconsin. Millroad is alleged to have been the owner of a certain parcel of real estate located at North Seventh Street and Wisconsin Avenue, Milwaukee, Wisconsin (hereafter, "Seventh Street Property").

The complaint alleges that in 1966 plaintiff was retained by Shapiro to develop the Seventh Street Property for use as a motor-inn; that plaintiff was to negotiate a lease therefor with some nationally reputed motel operator; that Shapiro had previously contacted an organization known as The Downtowner Corporation for this purpose, but negotiations had been unsuccessful; and that an alleged oral agreement for the retention of plaintiff's services regarding the Seventh Street Property was confirmed by letter from Shapiro to plaintiff dated August 17, 1966.

The complaint further alleges that, with the knowledge and approval of Shapiro, plaintiff thereafter engaged in various negotiations with The Downtowner Corporation, and advised Shapiro regarding methods, procedures and strategy directed toward the successful negotiation of a lease. During the course of these negotiations, The Downtowner Corporation is alleged to have in-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

dicated a preference for the Sixth Street Property which was then owned by ITC. Plaintiff contends that Shapiro thereafter orally authorized him to negotiate a lease for the Sixth Street Property and that a Letter of Intent was subsequently executed by The Downtowner Corporation regarding the Sixth Street Property. The Downtowner Corporation later signed a lease for occupancy of a motel to be constructed on the Sixth Street Property.

Plaintiff's complaint sets forth a claim in the amount of $180,000.00 for services rendered in connection with the negotiation of the lease.

After deposing plaintiff, defendants moved for summary judgment, supporting their motion with an attorney's affidavit, setting forth portions of plaintiff's deposition, and the affidavit of Shapiro, which is limited to statements of "opinion and belief" that there exists no dispute or issue respecting material facts. Plaintiff responded by filing an attorney's affidavit, setting forth portions of the Paulson deposition, and an affidavit executed by plaintiff. The district court granted defendants' motion, and entered an order for summary judgment. Plaintiff's motion to vacate, supported by further affidavits, was subsequently denied.

The court granted defendants' motion for summary judgment on three separate grounds:

(1) Plaintiff's action was held to be barred by Wisconsin Statutes § 452.13, which prohibits the maintenance of any action in the courts of Wisconsin for the collection of a brokerage commission by any person acting in the capacity of a real estate broker within the State of Wisconsin, unless such person is a duly licensed real estate broker or salesman.

(2) The alleged oral agreement relating to the Sixth Street Property was held to be void, pursuant to Wisconsin Statutes § 240.10(2), which provides that a contract to pay a commission to a real estate broker for leasing real estate for a term exceeding three years shall be void unless such contract is in writing and describes the real estate, the rent to be paid, the length of the lease, the commission to be paid and the period during which the broker shall procure the tenant.

(3) Plaintiff's claim was held to be barred by Wisconsin Statutes § 893.21(5) which provides that any action to recover salary, wages or other compensation for personal services, except fees for professional services, must be brought within two years of the completion of such services.

The court held that the aforementioned statutes were applicable to the instant case, that the plaintiff was not a duly licensed broker in the State of Wisconsin, that there existed no written agreement respecting the Sixth Street Property, and that plaintiff had last rendered services in connection with negotiating a lease for the Sixth Street Property more than two years prior to the commencement of this action.

I

§ 452.13

§ 452.13 provides as follows:

"No person engaged in the business or acting in the capacity of a real estate broker or salesman within this state shall bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he was a duly licensed broker or salesman at the time the alleged cause of action arose."

Plaintiff contends that the court below erred in applying § 452.13 in the instant case as a bar to the maintenance of this action because the record fails to disclose any instance in which plaintiff acted "in the capacity of a real estate broker" *in Wisconsin*. Alternatively,

plaintiff argues that application of the statute to the facts appearing in this record would be violative of the Commerce Clause of the United States Constitution, since plaintiff has averred in his various affidavits that all meetings, discussions and negotiations between the plaintiff and The Downtowner Corporation occurred outside the State of Wisconsin. Since we find that the record before us does not present facts warranting application of § 452.13, we do not reach the issue regarding the statute's constitutionality as applied to the facts contained in this record, or as applied to facts involving mere peripheral conduct which, although occurring in Wisconsin, is incidental to the actual negotiation of a lease.

The record does not demonstrate that plaintiff acted "in the capacity of a broker" within the State of Wisconsin, and in fact, contains affidavits of plaintiff stating that he engaged in no meetings, conversations, discussions or negotiations in Wisconsin with any representative of The Downtowner Corporation. At the very least, the record reflects a genuine issue of fact precluding summary judgment.

Defendants urge that because plaintiff met with Shapiro on several occasions and inspected the property in question, he acted in the capacity of a real estate broker *in Wisconsin*. They argue that plaintiff's reports and conferences with Shapiro were actually part of the process of negotiating the lease.

To discern what conduct constitutes acting "in the capacity of a real estate broker", we need look no further than the statute in question. § 452.01(2) defines a real estate broker as any person who:

"for another, and for commission, money or other thing of value, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an interest or estate in real estate."

The record indicates that at all times during which plaintiff acted "for another" in an attempt to "negotiate a . . . rental of an interest . . . in real estate", he was acting outside the State of Wisconsin. As defendants' agent he was not attempting "to negotiate" the lease when conferring with his alleged principal in Wisconsin. Negotiation of the lease occurred when plaintiff, acting for another (his principal), met and conferred with the prospective tenant, The Downtowner Corporation. As previously noted, plaintiff's affidavits aver that all such negotiations occurred either in Illinois or in Tennessee.

Contrary to defendants' contention, this court's decision in Reed v. Kelly, 177 F.2d 473 (7th Cir. 1949) does not require a different result. In *Reed*, we affirmed the dismissal of the complaint on the ground that the plaintiff, who was not a licensed real estate broker in Wisconsin, was barred under Wisconsin law from maintaining an action for the collection of a commission allegedly earned when plaintiff procured a purchaser for defendant's Wisconsin property. Unlike the instant case, no affidavits were filed averring the absence of negotiations with the prospective purchaser in Wisconsin; nor does the *Reed* decision indicate whether the purchaser was a Wisconsin resident.

In short, the plaintiff in *Reed* failed to establish that he had not acted in the capacity of a real estate broker within the State of Wisconsin. Here, plaintiff's sworn statement that all negotiations with the lessee occurred in Illinois and Tennessee renders inoperative the statutory requirement that he allege and prove that he was a duly licensed broker in Wisconsin at the time the alleged cause of action arose.

Our decision in this regard is consistent with numerous decisions construing the applicability of statutes similar to § 452.13.

In Re Stoddards Estate, 60 Wash.2d 263, 373 P.2d 116 (1962), involved factual circumstances analogous to those here presented. There, an Oregon broker sued for the collection of commis-

sions allegedly earned in connection with the sale of property located in the forum state, Washington. Relying upon a Washington statute almost identical to § 452.13, the trial court granted summary judgment on the ground that plaintiff, who was not licensed as a real estate broker in Washington, was thereby precluded from maintaining an action for brokerage commissions.

The Supreme Court of Washington reversed, noting that although the plaintiff had conferred with his principal in Washington on three separate occasions,

"all of appellant's negotiations with the Oregon purchaser occurred in that state, none in Washington although [appellant] did show the property to its Oregon customer before respondent agreed to pay it a commission." 373 P.2d at 117.

Thus, despite the broker's presence in Washington on various occasions, the statute was held inapplicable because all negotiations with the purchaser occurred in Oregon.

The *Stoddard* court relied heavily upon the Fifth Circuit Court of Appeals' decision in Richland Development Co. v. Staples, 295 F.2d 122 (5th Cir. 1961). In *Staples*, a Missouri real estate broker brought suit in the United States District Court for the Northern District of Alabama for commissions earned in procuring a customer for property located in Alabama. The defendant attempted to defend on the basis of an Alabama statute which prohibited any person from acting as a real estate broker without first being duly licensed in that state, and which had been construed by the Alabama Supreme Court as barring recovery by anyone failing to comply with the licensing requirement. Knight v. Watson, 221 Ala. 69, 127 So. 841 (1930). Plaintiff did not hold an Alabama broker's license.

Despite the fact that the broker had engaged in certain activities in Alabama, characterized by the *Staples* court as "collateral to the contract", the statute was held inapplicable. Noting that both the formation of the contract and "major portions of its performance" had occurred outside Alabama, the court reasoned that:

"While the statute is applicable to certain acts performed by Staples, this transaction is not of the sort at which the statute is primarily directed; . . . Under these circumstances the public policy argument thins into invisibility, and will not prevent enforcement of an otherwise valid contract." 295 F.2d at 129.

Similarly, in C. B. Snyder Realty Co. v. Sherrill-Noonan, Inc., 261 F.2d 269 (3rd Cir. 1968) the court refused to apply a Pennsylvania statute which would otherwise have barred an action for recovery of commissions by one not licensed as a broker under Pennsylvania law. Finding that the plaintiff had acted in the capacity of a broker only in New York and possibly New Jersey, the court held that if the plaintiff "did not perform any of its broker's activity in Pennsylvania in connection with the transaction on which recovery is now sought, it did nothing prohibited by the Act." 261 F.2d at 272.

More recently, the Third Circuit followed its decision in *Snyder*, refusing to bar an action brought by a New York broker for commissions earned through the sale of Pennsylvania real estate. Sun Sales Corporation v. Block Land, Inc., 456 F.2d 857 (3rd Cir. 1972).

Under similar circumstances, other courts have avoided enforcement of statutes similar to § 452.13 on the ground that choice-of-law considerations render the law of the forum state inapplicable; e. g., James v. Hiller, 85 Ariz. 40, 330 P.2d 999 (1958); Cochran v. Ellsworth, 126 Cal.App.2d 429, 272 P.2d 904 (1964). Since we find that the provisions of Wisconsin's statute do not apply to the conduct reflected in this record, we need not determine whether the public policy considerations which prompted the enactment of § 452.13 would, given different circumstances, require its application.

We view as persuasive the decisions discussed herein, regarding both the purposes and the applicability of statutes such as § 452.13. The purchaser in this instance was not a resident of Wisconsin, nor were the negotiations comprising plaintiff's activities as a broker conducted in Wisconsin. Whether the statute would be applicable if plaintiff had conducted most, but not all, negotiations with the lessee outside Wisconsin is not before this court, but we are impressed with the treatment afforded this question by Judge Wisdom in Richland Development Company v. Snyder, *supra*. In any event, we are satisfied that Paulson did not act "in the capacity of a broker" in Wisconsin and that § 452.13 therefore does not bar the maintenance of this action.

## II

### § 240.10(2)

§ 240.10(2) provides as follows:

"Every contract to pay a commission to any real estate agent or broker or to any person for leasing real estate for a term exceeding 3 years shall be void unless such contract, note or memorandum thereof describing such real estate, expressing the rent to be paid or a method to determine the same, the length of the lease, the commission to be paid, and the period during which said person shall procure a tenant, be in writing and be subscribed by the person agreeing to pay such commission."

■ Whether § 240.10(2) is applicable in the instant case is basically a choice-of-law question. While it may be that, in the interest of advancing stated public policy, Wisconsin courts would enforce a Wisconsin regulatory statute such as § 542.13 in an appropriate case, such is not the case with respect to the Statute of Frauds, as codified under § 240.10(2). Unlike § 452.13, re-

flecting public policy of the forum state to regulate the licensing of real estate brokers through supplemental enforcement legislation, § 240.10(2) represents but a small portion of Wisconsin's contract law and does not embrace any particular public policy considerations. This distinction is of no small import, since the district court sitting in Wisconsin must determine whether Wisconsin's choice-of-law principles would preclude application of § 240.10(2) under the facts here presented.

Plaintiff and defendants agree that Wisconsin has embraced the "center-of-gravity" or "grouping-of-contacts" approach reflected in Section 188, Conflict of Laws, Second. Haines v. Mid-Century Insurance Co., 47 Wis.2d 442, 177 N.W.2d 328 (1970).[1]

In pertinent part, Section 188 of the Restatement provides:

"(1) . . .

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203."

---

1. It is also noteworthy that Section 141 of the Restatement specifically provides that "Whether a contract must be in writing

. . . is determined by the law selected by application of the rules of §§ 187–188."

■■ The oral authorization allegedly given plaintiff by Shapiro to negotiate a lease for the Sixth Street Property was apparently communicated to plaintiff in Wisconsin. However, this fact does not establish that Wisconsin was "the place of contracting." As defendants correctly observe, the place of contracting is the place where the last act occurred giving the contract binding effect. The alleged contract called for plaintiff to negotiate a lease with a prospective tenant. The last act necessary to create a binding contract between the broker and his principal was the acquisition by plaintiff of a lessee ready, willing and able to lease the property under terms agreeable to the principal. This occurred in Tennessee. As the court correctly observed in Cochran v. Ellsworth, *supra*.

"Ordinarily the 'last act essential to the validity' of a brokerage contract is not the signing of authorization to act. The mere engagement of a broker to dispose of specified property does not create an enforceable contract, for the broker is not obligated to find a purchaser. An enforceable contract does not result until the broker finds one able and willing to buy the property at the authorized price." 272 P.2d at 908. Accord, James v. Hiller, 85 Ariz. 40, 330 P.2d 999, 1002 (1958).

For like reasons, the place of performance of the alleged contract was also Tennessee. The performance contemplated was for plaintiff to act in the capacity of a broker in an effort to procure a lessee for the Sixth Street Property. As previously noted, plaintiff acted as a broker when he conducted negotiations with the prospective tenant in Tennessee. Under these circumstances, Wisconsin courts have held that the place of performance determines the applicable law. In Re Knippel's Estate, 7 Wis.2d 335, 96 N.W.2d 514 (1959); Pat J. Murphy, Inc. v. Drumond Dolomite, Inc., 214 F.Supp. 496, 498 (E.D.Wis. 1963), aff'd 346 F.2d 382 (7th Cir. 1965).

Moreover, Subsection (3) of Section 188 indicates that where the place of negotiating a contract and the place of its performance are in the same state, the law of the forum will usually be applied *except* as otherwise provided in Sections 189–199 and 203. Since the state wherein this contract (between the broker and his principal) was negotiated and the state of its performance are not the same, application of Wisconsin's statute is even less compelling, and the exceptions to its applicability reflected in Sections 189–199 and 203 assume added importance.

Of particular significance is Section 196 of the Restatement, relating to "contracts for the rendition of services." Section 196 provides that:

The validity of a contract for the rendition of services and the rights created thereby are determined . . . by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless . . . some other state has a more significant relationship under the principles stated in § 6. . . ."

We find nothing in the principles set forth in Section 6[2] which would lead to

2. Section 6 of the Restatement sets forth general choice-of-law principles and provides as follows:

(1) The court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underline the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

the conclusion that § 240.10(2) should be applied. On the contrary, the provisions in Section 6 would more appropriately suggest application of Tennessee law under the facts here presented. ·

Admittedly, Wisconsin is the state of defendants' residence and the state wherein the property is situated. In addition, the alleged contract for plaintiff's services appears to have been negotiated between the broker and his principal in that state. We find, however, that these factors, particularly in light of the provisions of Section 196 of the Restatement, are quite clearly outweighed by the fact that plaintiff's services were rendered and the contract was performed in Tennessee.·

Finally, as reflected in the Comments which follow Section 188 of the Restatement, "protection of the justified interests of the parties is the basic policy underlying the field of contracts," and these expectations should not be denied by application of local law, absent strong public policy considerations to the contrary. · We do not view § 240.10(2) as embracing public policy considerations or matters of state interest such as might otherwise require application of Wisconsin law. For this reason and in light of the foregoing discussion regarding the principles set forth in Section 188 of the Restatement, we hold that Tennessee law should be applied to determine the validity of the alleged oral contract and that plaintiff's action is therefore not barred by § 240.10(2).[3]

### III

#### § 893.21(5)

§ 893.21(5) provides that "any action to recover unpaid salary, wages or other compensation for personal services, except fees for professional services" must be brought within two years after the cause of action has accrued. Defendants argue that the last services performed by plaintiff occurred in March of 1968; that this action is not one for the collection of fees for professional services; that plaintiff's complaint was filed in May of 1971, more than two years after the completion of his services; and that § 893.21(5) therefore bars this action.

Defendants' argument centers principally on the contention that a suit for the collection of brokerage commissions is not an action to recover "fees for professional services." The implication of this contention seems to be that plaintiff is necessarily asserting a claim to recover "compensation for personal services," and that unless his services are deemed to be professional in nature, this action is barred by § 893.21(5). It is with this assumption that we disagree, and therefore find it unnecessary to engage in the semantical exercise of discerning whether a broker is a "professional" and whether brokerage commissions are "professional fees."

The Supreme Court of Wisconsin has heretofore interpreted the meaning of "personal services," as that term is used in § 893.21(5). In Estate of Javornik,

---

3. Tennessee Code Annotated § 23–201(4), provides that "any contract for the sale of lands . . ., or the making of any lease thereof for a longer term than one year; . . ." must be in writing. In the past 100 years, only two Tennessee decisions have considered whether this statute requires that the contract between a real estate agent and his principal be in writing. Cobble v. Langford, 190 Tenn. 385, 230 S. W.2d 194 (1950); Lowe v. Wright, 40 Tenn.App. 525, 292 S.W.2d 413 (1956). Each considered the validity of a real estate contract executed by the seller's agent, in the absence of a written agency contract, and both cases held that § 23–201(4) does not require that the agent's authority be in writing. Although neither case specifically addressed the issue, it would thus appear by implication that the Tennessee Statute of Frauds does not require that the contract between a real estate agent and his principal be written in order for the agent to maintain an action to collect commissions. Since this question is not squarely before this Court, however, we leave a determination of the applicable Tennessee law to the district court, where the issue, if contested on remand, can be more thoroughly considered with the benefit and assistance of briefs.

35 Wis.2d 741, 151 N.W.2d 721 (1967), that court stated:

"We think 'personal services' as used in sec. 893.21(5), Stats., means human labor such as is commonly rendered in return for a salary or a wage in the case of an employee and for 'other compensation' in the case of an independent contractor. . . . Such human labor must be in the nature of a service as distinguished from the end-product or the fruit of the service . . . . the *distinguishing feature* of personal services for the purpose of this section is *whether the human labor itself is sought and is the object of the compensation or whether the end-product of the service is purchased.*" (emphasis added) 151 N.W. 2d 725.

This language was subsequently quoted in full by the Supreme Court of Wisconsin in Younger v. Rosenow Paper & Supply Co., 51 Wis.2d 619, 188 N.W.2d 507, 510–511 (1971) and in Estate of Schroeder v. Gateway Transportation Co., 53 Wis.2d 59, 191 N.W.2d 860 (1971). The *Younger* court held that an employee's claim for a bonus payable under a stock purchase plan was an action for breach of contract, not one to recover compensation for personal services, since the bonus was payable not for plaintiff's human labor *per se*, but only in the event that his services produced the desired end-product, *i. e.*, profit.

Similarly, in *Schroeder*, the court held that a claim for deferred compensation under defendant's pension plan was not an action for "personal services", since the main benefits derived by defendant from the plan admittedly included those which accrue from employee retention, *i. e.*, lower hiring and training costs and more efficient employee performance resulting from the use of experienced labor. This was the "end-product" for which deferred compensation was paid, and § 893.21(5) was therefore held inapplicable.

These cases leave no doubt that § 893.21(5) is to be narrowly con-strued, precluding its application in the instant case. Defendants assumed no obligation to compensate plaintiff for his efforts to procure a lessee, unless and until he had successfully done so. Thus, plaintiff does not seek compensation for "human labor," but rather for the "end-product" of his services, *i. e.*, the procurement of a lessee ready, willing and able to lease the Sixth Street Property. Under these circumstances, plaintiff's claim is not one for "personal services" and is not barred by § 893.21(5).

For these reasons the judgment before us must be reversed and the cause remanded to the district court for trial on the merits.

Reversed and remanded.