[L. A. No. 1970. Department One.—January 24, 1908.]

## TITLE INSURANCE AND TRUST COMPANY, as Receiver, appointed in the Action of H. G. Harvey v. Thomas McDaniels Potter, etc., Respondent, v. L. M. GRIDER et al., Appellants.

RECEIVER—ORDER APPOINTING—COLLATERAL ATTACK—PARTNERSHIP— PLEADING APPOINTMENT.—In an action brought by a receiver appointed in an action between partners, under section 564 of the Code of Civil Procedure, the order appointing the receiver is only collaterally involved, and cannot be attacked upon any ground except want of jurisdiction to make it. In the complaint in the action by the receiver, it is not necessary to aver that in the action in which he was appointed the parties were partners. An allegation that the order of appointment was "duly made" is, under the rule of pleading declared in section 456 of the Code of Civil Procedure, equivalent to an averment that all the jurisdictional prerequisites to the appointment of a receiver existed.

ID.—ACTION TO RECOVER PARTNERSHIP ASSETS—PAYMENT TO RECEIVER.— In an action by a receiver so appointed, to recover a sum of money received by the defendants under an agreement between them and one of the parties to the action in which the receiver was appointed, the questions as to whether such money was partnership assets and as to its ultimate distribution between the partners, are not involved. So far as such defendants are concerned, the only questions involved are whether the fund in controversy was by the terms of the order placed within the control of the receiver, and whether, as between themselves and the party with whom they made the agreement, the latter was entitled to demand the fund from them. A payment by the defendants to the receiver in such action would fully protect them against any claim as to the ownership of the fund asserted by the party with whom they made the agreement.

ID.—ORDER APPOINTING RECEIVER.—The complaint in this action is reviewed and held sufficient to show that the order appointing the receiver directed him to take into his possession the fund in controversy.

ID.—PARTNERSHIP—AGREEMENT APPOINTING AGENTS TO SELL LAND.—While the question whether or not a partnership exists is to be determined from the nature of the relation agreed upon, rather than the name which the parties have given to it, some weight must be given to the language of the parties themselves. In the present case, an agreement whereby one party appoints the other his "exclusive agents to sell and manage" a tract of land, and provides that such "agency" shall continue for a specified time, is held to create a mere agency and not a partnership, notwithstanding the parties designated as agents were to pay certain expenses of the sale, and for their services were to be paid a certain portion of the net profits.

ID.—PAYMENT OF AGENTS FROM PROFITS OF SALES.—Where agents are employed to sell and manage a tract of land, under an agreement whereby their agency was to last for a specified period, and for their services they were to receive a portion of the net profits, their right to share in the profits is limited to sales made during the period their agency continued.

ID.—EXPENSES TO BE PAID BY AGENTS.—Where such a contract recites that the agents are appointed in consideration of their "putting in cement walks . . . building four stone pillars . . . writing all advertisements and all advertising, making out all papers and managing the sales" of the land, and further provides that "all the above is to be paid for" by them, the obligation is imposed on the agents to pay such expenses and not merely to advance the same.

APPEAL from a judgment of the superior court of Los Angeles County and from an order refusing a new trial. W. J. James, Judge.

The facts are stated in the opinion of the court.

Stephens & Stephens, for Appellants.

J. Wiseman Macdonald, for Respondent.

SLOSS, J.—The plaintiff, as receiver appointed by the superior court in an action brought by H. G. Harvey against T. McD. Potter, commenced this action to recover from Grider and Hamilton moneys received by them from the sale of lots under an agreement between them and Potter. The court found that the defendants had in their hands, as the proceeds of sales under said agreement, the sum of $3461.55 over and above all credits due them, and gave the plaintiff judgment for this amount. The defendants appeal from the judgment and from an order denying their motion for a new trial.

On the appeal from the judgment it is contended that the complaint fails to state facts sufficient to constitute a cause of action, and in this connection several points are made.

It is urged that the complaint is defective in that it does not aver the existence of a partnership between the parties to the action of Harvey *v.* Potter, in which the receiver was appointed. Assuming that the appointment was based upon the code provision authorizing a receivership in certain actions between partners (Code of Civil Procedure, sec. 564), the question whether Harvey and Potter were in fact partners cannot be material here. The order appointing the plaintiff receiver was not made in this action and is only collaterally involved. It cannot, therefore, be attacked upon any ground except a want of jurisdiction to make it. (23 Am. & Eng. Ency. of Law, 2d ed., 1126; *Chetwood* v. *California Nat. Bank,* 113 Cal. 649, [45 Pac. 854].) The complaint alleges that the order of appointment was "duly made" by the superior court. This is, under the rule of pleading declared in section 456 of the Code of Civil Procedure, equivalent to an averment that all the jurisdictional prerequisites to the appointment of a receiver existed. If the court had jurisdiction to make the appointment, the only questions affecting the defendants are whether the fund in controversy was by the terms of the order placed within the control of the receiver, and whether, as between themselves and Potter, he was entitled to demand that fund from them. Potter was a party to the action in which that order was made, and for the purposes of this action the plaintiff stands in his shoes. A payment to the receiver by the defendants in this action will fully protect them against any claim of Potter as to the ownership of the fund. The ownership of the money as between Harvey and Potter is a question for determination in the main action in which the receiver was appointed. If upon the trial of that action it should turn out that there never was any partnership relation between the parties, and that Potter is in his individual capacity entitled to the whole of the fund, his rights would there be preserved. But in this question the defendants here have no concern. The receivership was created merely for the purpose of preserving the assets involved in the controversy between Harvey and Potter, and all that these defendants are interested in is that they shall

have the benefit of any defense to which they might be entitled as against Potter. If they have no such defense it can make no difference to them how the fund is ultimately disposed of as between Harvey and Potter.

A second point urged against the sufficiency of the complaint is that the order of appointment, which is pleaded in full, did not by its terms include the property here involved. The complaint alleges that Potter became the owner of certain property situated in Hollywood, in Los Angeles County; that shortly before acquiring title he entered into a written agreement with Grider & Hamilton by which they were to sell the tract (which was to be known as ''Grant Place'') upon certain terms. The order appointing the receiver reads in part as follows: ''It is therefore ordered that the Title Insurance and Trust Company . . . be, and is hereby appointed receiver of all the debts, moneys, properties, equitable interest and things in action belonging to said firm (referred to in the complaint) and especially of all moneys and contracts arising from the sale or agreement of sale for lots in Grider & Hamilton's Grant Place . . . the title to which said lots was or is in said Thomas McDaniels Potter, and also of all lots in said Grant Place remaining unsold. That said receiver upon being duly qualified may sell said property and shall proceed to collect the debts of said firm and do the other things hereinbefore required of him, and the said parties herein, and all other persons having any of said property in their possession or under their control are hereby ordered to deliver the same, and all persons owning any money belonging to said firm, and especially money arising from the sale of lots in said Grant Place, are hereby ordered to pay over the same to the Title Insurance and Trust Company, as such receiver, upon its demands.'' There are further allegations to the effect that the firm referred to in said order is the one alleged in the complaint in Harvey *v.* Potter to have consisted of one Simmons and Potter and to have been formed for the purpose of purchasing the property described. It is argued that the order appointing the receiver covers only property belonging to the firm referred to in the complaint in Harvey *v.* Potter, and that the complaint in this action does not allege that the contract with Grider & Hamilton was an asset of that firm. But the order appointing the plaintiff

specifically covers "all moneys and contracts arising from the sale or agreement for sale of lots in Grider & Hamilton's Grant Place." Even if this is to be read as meaning only such moneys and contracts as belonged to the firm referred to in the complaint in Harvey *v.* Potter, the complaint in this action alleges that the complaint in the former action had averred that such a firm had been formed for the purpose of purchasing this very property. It is true that it is not definitely averred that in the complaint of Harvey *v.* Potter the agreement between Potter and Grider & Hamilton was alleged to be an asset of the partnership there involved. A demurrer for uncertainty, in this particular, would probably have been good. But no demurrer was interposed, and the answer raised no issue as to whether or not the contract in question was one of the assets of the firm alleged in Harvey *v.* Potter to exist. Under these circumstances, we think the allegations of the complaint, read as a whole, are sufficient to show that the partnership alleged in Harvey *v.* Potter to exist was formed for the purpose of dealing in these lands, and that, therefore, any contract made by either of the alleged partners for the sale of such lands was included in the matter in litigation in Harvey *v.* Potter and in the property directed to be taken into the possession of the receiver.

The contention is made that the action is brought against the defendants as agents of Potter, and that, inasmuch as Potter was a partner, no suit could be brought against him (or his agents) unless it appeared that all of the other assets of the partnership had first been exhausted. Whatever merit the point might possess in a suit between partners, it is not applicable here. This is not a bill for an accounting against Potter as a partner, nor is the judgment a judgment against Potter as a partner. The court, by its receiver, is merely taking into its possession a fund claimed to belong to the partnership. Whether upon a final accounting those assets should be applied to the uses of the partnership or should be returned to Potter is, as has already been stated in another connection, a matter to be determined in the action of Harvey *v.* Potter. The judgment in this action is not an adjudication of the ultimate rights of the contending parties in this fund, and the defendants here are in no position to assert a defense which Potter may have against Harvey's claims.

The contract of sale between Potter on the one hand and Grider & Hamilton on the other is set out in full in the complaint. It is in the form of a letter and reads as follows:

"LOS ANGELES, CALIFORNIA, Oct. 13th, 1904.
"GRIDER & HAMILTON,
        "225 W. Second Street,
                "Los Angeles, California.
"Gentlemen:

"In consideration of Grider and Hamilton putting in cement walks on the east side of Warner Avenue from Prospect Boulevard, also trees on other streets and palms on each side of Warner Avenue; building four stone pillars—two on Prospect Boulevard, and two on Sunset Boulevard, cornering on Warner Avenue; writing all advertisements and all advertising; making out all papers, and managing the sales of what is now known as the Warner tract (all the above to be paid for by Grider&Hamilton), I hereby appoint you, gentlemen, exclusive agents to sell and manage the above tract, for which you are to receive one half the net profits. Property to be sold one third cash, the balance in six, twelve, and eighteen months; or monthly payments where above terms cannot be obtained.

"I also agree to have same subdivided on such plans as you may direct, and change the name to 'Grant Place.' Property to be placed on sale not later than November 14th, 1904. Prices to be agreed upon and made a part of this agreement. Books showing sales and expenditures to be open for my inspection at any and all times.

"It is further agreed and understood that the length of this agency shall be for a period of six months.
                "Yours truly,
                        "THOS. McD. POTTER.
"Approved:
    "Grider & Hamilton."

It is argued by the appellants that this agreement constituted a partnership between Potter and Grider & Hamilton, and certain objections to the complaint are based on this premise. It is unnecessary to state what these objections are, since we think there is no merit in the underlying position that the agreement above quoted created a partnership be-

tween the parties to it. While, of course, the question whether or not a partnership exists is to be determined from the nature of the relation agreed upon, rather than the name which the parties have given to it, some weight must be allowed to the language of the parties themselves. The agreement states that by it Potter appoints Grider & Hamilton "exclusive agents to sell and manage the above tract," and it further provides that the "agency" shall continue for six months. There is nothing in the agreement in question that indicates that Grider & Hamilton were to pay any part of the losses that might be suffered in the venture, nor is either party given power to make contracts binding all. Certain expenses of the sale are to be borne by Grider & Hamilton, and their compensation for their services is to be determined by the net profits, rather than by a commission upon the amounts realized. Neither of these features is in any degree inconsistent with the existence of an agency, which, on the face of their agreement, the parties were creating. Without entering into any discussion of authorities, it will be sufficient, in support of the conclusion that a partnership was not formed, to refer to the following cases: *Hanna* v. *Flint*, 14 Cal. 73; *Smith* v. *Schultz*, 89 Cal. 526, [26 Pac. 1087]; *Salinas City Bank* v. *DeWitt*, 97 Cal. 78, [31 Pac. 744]; *Coward* v. *Clanton*, 122 Cal. 451, [55 Pac. 147]; *Nofsinger* v. *Goldman*, 122 Cal. 609, [55 Pac. 425].

It is claimed that the trial court erred in admitting in evidence a statement showing the sales made by Grider & Hamilton, together with their expenditures and the profits made upon the sales. Certain of the findings are also assailed as unsupported by the evidence. Most of the points made in these connections are the same as those already discussed in considering the sufficiency of the complaint. Two additional contentions are advanced.

It is urged that the court erred in limiting the allowance of profits claimed by Grider & Hamilton to those realized on sales made during the six months following the date of the agreement. It is claimed that while the contract limited their agency to six months, they were entitled to receive one half of the net profits upon sales made by others thereafter. This is an entirely unreasonable construction of the contract. Grider & Hamilton were employed as agents to sell and manage

the tract, and for their services they were to receive one half of the net profits. Their agency was to last for the period of six months. Their share of the profits was the compensation provided for their services in making sales. When their duty to render service ended, their right to compensation ended with it.

Nor is there greater merit in the contention that the expense of putting in cement walks, building stone pillars, and advertising was to be paid out of the proceeds of the sales. The contract reads, "In consideration of Grider & Hamilton putting in cement walks . . . building four stone pillars . . . writing all advertisements and all advertising; making out all papers, and managing the sales of what is now known as the Warner tract (all of the above to be paid for by Grider & Hamilton), I hereby appoint you exclusive agents," etc. This language is so plain that there is no room for construction. The appointment as agents is made in consideration of the payment of these expenses by Grider & Hamilton. Any possible doubt that these payments were to be borne by them is removed by the further language, "all the above to be paid for by Grider & Hamilton." To give to the contract the construction contended for by appellants would be to say that the provision requiring them to *pay* certain expenses is to be read as if they were merely to *advance* these expenses.

The judgment and order appealed from are affirmed.

Shaw, J., and Angellotti, J., concurred.