[Civ. No. 12509.   Second Dist., Div. One.   Sept. 18, 1941.]

ERNEST K. SHEBLE, Appellant, v. MABEL TURNER, Respondent.

Alfred E. Dennis for Appellant.

Kenneth A. White for Respondent.

DESMOND, J., *pro tem.*—This is an appeal from a judgment of dismissal entered upon the court's sustaining, without leave to amend, a demurrer to a complaint in which ap-

pellant sought to recover damages for an alleged breach of contract.

The written agreement between the parties, dated March 28, 1939, is set out in the complaint. In the preamble respondent is described as first party; appellant, as second party. The balance reads as follows:

"Whereas, Party of the first part owns the following described real estate which is free and clear of all incumbrances: Lots 6, 7, 8, 9, 10, 11 and one half of Lot 12, of Block 1, Tract No. 5877 of the City of Burbank, Calif. A portion of which lies in Los Angeles County.

"It is the desire of the first party to erect residences upon these lots by placing F. H. A. mortgages thereon and to place same up for sale.

"Second party is to act as agent for first party in all matters pertaining to obtaining plans, arranging for placing of mortgages, supervision of construction, letting of sub-contracts, payments thereof, assisting in sale of property and payments of commissions.

"First party will complete mortgages and other necessary documents, also to advance funds by notes or otherwise during construction and upon completion and sale of property if there is any money advanced over mortgages, same to be repaid to first party. The net profit remaining from sale of lots and residences is to be divided between parties equally upon sale of each residence.

"Mabel L. Turner, Party of first part

"Witness Florence J. Swain

"Ernest K. Sheble, Party of second part

"Witness Ellena Braudner."

It is alleged that plaintiff caused the lands to be surveyed, negotiated a contract which defendant signed whereby plans and specifications were prepared and delivered to the parties for buildings on certain of said lands, conferred with city officials concerning zoning of the property and prepared and presented plans therefor, attended meetings of a planning commission, assisted defendant in preparing applications for loans on the land from Federal Housing Administration, conferred with individuals concerning sale of said lands and the houses to be erected thereon, and with the defendant concerning the performance of their agreement, "and per-

formed all acts required of plaintiff by said agreement up to the time hereinafter mentioned''; that is, the time when defendant notified plaintiff that she would not proceed further to perform, and instructed plaintiff to render no further services pursuant to the agreement.

Paragraph IV of the complaint is as follows:

''IV. That defendant had said lots surveyed and mapped so that plaintiff and defendant could build eight houses on said seven lots. That plaintiff and defendant agreed to build eight houses on said lots. That at all times herein mentioned, the houses planned and intended to be built on said lots by the plaintiff and defendant could be built at a cost to them of from $3500.00 to $5500.00, according to the type and size planned, and each such house would have a market value, and could be sold for a sum of, approximately, $1500.00 in excess of its cost.''

Since, according to these allegations, the gross profit on the eight buildings would amount to approximately $12,000, plaintiff claims damages in one-half that amount. He argues in his brief that such recovery is justified on the theory that he and respondent are joint adventurers.

As supporting that theory he cites the case of *Ingram* v. *Johnston,* 38 Cal. App. 234 [176 Pac. 54], in which the court recognized the equitable right of the plaintiff to a one-eleventh interest in unsold land and in the profits already realized from a land development. The contribution by the plaintiff to the enterprise had been in the form of his special knowledge of real estate values obtained from a long period of service as land agent for a railroad company, which knowledge, together with plaintiff's counsel and advice, was of advantage to the other parties who paid cash as their contribution to the venture. It should be noted that before Ingram brought this suit for an accounting his associates had recognized his contribution toward acquisition of the property of the enterprise by issuing in his favor a certificate for the one-eleventh interest, above mentioned, ''conceded by defendants to have represented the interest of plaintiff in said property.'' For this and other reasons we do not consider the cited case persuasive to appellant's point of view.

The Ingram case was decided in 1918 and at that time the Contractors' License Law of California, which is of some interest in the present case, was not in effect. This law was

passed originally in 1929, and, as Act 1660, appears in volume one, page 852 of Deering's General Laws (1937), in the amended form which was in force at the time the contract between the parties hereto was signed.

Section 12 of the act provides that: " . . . No person engaged in the business or acting in the capacity of a contractor as defined in section 3 of this act, shall bring or maintain any action in any court in this State for the collection of compensation for the performance of any act or contract for which a license is required by this act without alleging and proving that such person was a duly licensed contractor at all times during the performance of such act or contract."

This proviso of the Contractors' License Law furnishes the first ground of the demurrer, stated in the following language: "That said complaint does not state facts sufficient to constitute a cause of action against the defendant in that there is no allegation by the plaintiff that he was a duly licensed contractor at all times during the performance of such act or contract mentioned in said amended complaint."

Section 1 of the act provides that "It shall be unlawful for any person, firm, copartnership, corporation, association or other organization . . . to engage in the business or act in the capacity of a contractor within this State without having a license therefor as herein provided, unless . . . particularly exempted as provided in this act."

Section 2 provides among its exemptions in paragraph (d) "Owners of property, building or improving structures thereon for the occupancy of such owners, and not intended for sale."

The contract upon which this suit was brought contains as one of its clauses, "Whereas, Party of first part owns the following described real estate," and as another clause, "It is the desire of the first party to erect residences upon these lots." It also states that "Second party is to act as agent . . . *assisting in sales* of property," and provides for equal division of "the net profit remaining *from the sale* of lots and residences." (Emphasis added.) It is apparent from this language that the owner of this property contemplated improving it by constructing buildings thereon, not for her own occupancy, but intended for sale. Therefore, even if the contract could be construed as creating a joint adventure, neither of the parties thereto would be entitled to

exemption, but would be a "contractor," as that term is defined under section 3 of the act: "A contractor within the meaning of this act is a person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, excepting licensed architects or registered civil engineers acting solely in their professional capacity, who in any capacity other than as the employee of another with wages as the sole compensation, undertakes or offers to undertake or purports to have the capacity to undertake, or submits a bid, to construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building, highway, road, railroad, excavation or other structure, project, development, or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith; including the eradication of or the processing against infestation by pests structurally injurious to buildings or structures; provided that the term contractor, as used in this act, shall include subcontractor or specialty contractor, but shall not include anyone who merely furnishes materials or supplies without fabricating the same into, or consuming the same in the performance of, the work of the contractor as herein defined."

We take the view, contended for by respondent, that the agreement between the parties did not create a joint adventure; that it was merely a contract of agency. The court said in construing a somewhat similar instrument in *Title Insurance & Trust Co.* v. *Grider*, 152 Cal. 746 [94 Pac. 601], at page 752: "some weight must be allowed to the language of the parties themselves." In reading the present agreement, we note that the "second party is to act as agent for first party," who "owns the following described real estate," in two activities: the erecting of residences upon defendant's lots and assisting in the sale thereof. We note further that in the complaint the defendant is described as owner of the property involved and that the suit is not one in equity or to impress a trust upon the real estate. It asks damages for breach of contract, and does not refer to a joint adventure. Whether or not arguments were made before the trial judge that the transaction constituted a joint enterprise does not appear, but that view is presented in appellant's brief ably and at length. Every case cited has been carefully examined, but still we are not convinced that either of these parties

intended, at the time their agreement was signed, that it should be anything more than it purports to be, by the language used, or that it is in fact or legal effect anything other than an agency contract.

The second ground of demurrer is similar to the first: "That said complaint does not state facts sufficient to constitute a cause of action against the defendant in that there is no allegation by the plaintiff that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

Section 1 of the California Real Estate Act, Deering's General Laws (1937), Act 112, reads as follows: "Engaging in business or acting without license unlawful. It shall be unlawful for any person, copartnership or corporation to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this State without first obtaining a license from the State Real Estate Division."

Section 20 of said act requires an allegation in any action in which a person seeks to collect compensation for the performance of any of the acts mentioned in section 2, that "such person . . . was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose." A reading of section 2 of the act satisfies us that the services which appellant undertook to perform, as agent for respondent in disposing of her property, are among those there listed, and, since the complaint contained no allegation that plaintiff was duly licensed as required by the act, that the second ground of demurrer, like the first, was valid. (See *Silverberg* v. *Baum,* 95 Cal. App. 535 [273 Pac. 47], and cases there cited.)

If appellant were actually in possession of a contractor's license "at all times during the performance of such act or contract," and of a real estate license "at the time the alleged cause of action arose," he conceivably might have amended his complaint to state a cause of action, but no such contention is made and, therefore, we conclude he is in no way aggrieved by the action of the court in precluding an amendment.

Judgment affirmed.

York, P. J., and Doran, J., concurred.