**CONSUL LIMITED, Kenneth B. Wilson dba Ken Wilson Associates, Plaintiffs-Appellants,**

**v.**

**SOLIDE ENTERPRISES, INC., a corporation, and HRH Operating Company, a corporation, et al., Defendants-Appellees.**

**Nos. 84–6610, 86–5522.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1986.

Decided Oct. 20, 1986.

13. Moreover, on remand, Thorne's damage award will increase.

Rosbon D.B. Whedbee, Ahoskie, N.C., for plaintiffs-appellants.

Harry L. Gershon, Richard, Watson, Dreyfuss & Gershon, Los Angeles, Ca., for defendants-appellees.

Before GOODWIN, TANG, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Consul, Ltd. and Kenneth B. Wilson appeal from orders dismissing their complaints for failure to state claims. We reverse.

## BACKGROUND

Consul is a North Carolina corporation of which Wilson is president. Wilson is licensed as a real estate broker in North Carolina, Georgia, and several other states but not in California. Consul has no broker's licenses. Actions brought by Consul and Wilson, one filed in North Carolina and transferred to California pursuant to 28 U.S.C. § 1404(a) (1982), the other filed in California, have been consolidated. Defendants include Raschid Zeghar, an Algerian citizen domiciled in California, and a group of corporations which own or operate the resort properties whose sale is at issue.[1]

The complaints in the two actions are nearly identical. Allegations relating to property in the Bahamas, however, are found only in the North Carolina complaint. Plaintiffs allege that they agreed orally with defendants to perform certain real estate consulting and brokerage services. As a result of defendants' breaches of those agreements, plaintiffs brought state court actions in California and North Carolina. After negotiations, plaintiffs and defendants reached a settlement agreement and the state court actions were dismissed. The settlement agreement provided, *inter alia*, that plaintiffs would receive the exclusive right to arrange for the sale of one property in the Bahamas and one in California and the non-exclusive right to sell a second California property. These three transactions are at issue in this case. The agreement also gave an exclusive right of sale to a North Carolina property not at issue in this case. It provided that it would be interpreted "under the laws of the state of North Carolina and California or either of them."

---

1. Paradise Beach Inn, Ltd., a Bahamian corporation which operates the Paradise Beach Inn Hotel, Restaurant and Pavilion in the Bahamas; Bel Air Sands Hotel Corporation, a California corporation that used to do business as the owner of the Bel Air Sands Hotel; B.A.S. Operating Company, which operated the Bel Air Sands Hotel; Socintec, S.A., a Panamanian corporation with offices in Geneva, Switzerland; Solide Enterprises, Inc., a California corpora-tion, which owns the Hollywood Roosevelt Hotel properties; and HRH Operating Company, a California corporation that operates those properties.

Plaintiffs originally brought suit in North Carolina against all current defendants and others since dismissed. They later brought the California suit against Solide and HRH, and dismissed those defendants from the North Carolina action.

The parties later entered into "Brokerage/Agency Agreements," drafted by the defendants, that provided specifications for the sale of each of the four properties. The agreements relating to the two California properties and the property in the Bahamas provided that they would be interpreted under California law. The fourth Brokerage/Agency Agreement, involving the North Carolina property, provided that it was to be interpreted under North Carolina law.

The complaints allege that defendants did not cooperate with plaintiffs' attempts to arrange the sales and attempted to make sales that violated the exclusive nature of the agreements. Plaintiffs claim damages for anticipatory breach, breach of contract, intentional interference with contractual relations and fraud.[2]

The district court ruled that California law applied and dismissed the complaints for failure to state a claim. It held that because plaintiffs had no California broker's licenses they could not maintain actions for breach of contract, and because in the absence of a license the settlement agreement was illegal, they could not maintain the related tort actions. Plaintiffs timely appeal.

## STANDARD OF REVIEW

We review a dismissal for failure to state a claim and a district court's interpretation of state law *de novo*. *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986); *Matter of McLinn*, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc). An action may be dismissed for failure to state a claim only if it appears certain that plaintiffs can prove no set of facts that entitles them to relief. *Gibson*, 781 F.2d at 1337.

## DISCUSSION

### I. Choice of Law

A federal court ordinarily applies the choice-of-law rules of the state in which

it sits. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n. 8, 102 S.Ct. 252, 259 n. 8, 70 L.Ed.2d 419 (1981). *In re Yagman*, 796 F.2d 1165, 1171 (9th Cir.1986). However, when a case is transferred pursuant to 28 U.S.C. § 1404(a), we must apply the choice-of-law rules of the state from which the case was transferred. *Piper Aircraft*, 454 U.S. at 243 n. 8, 102 S.Ct. at 259 n. 8; *S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981). Thus the California action will be governed by California choice-of-law rules, the North Carolina action by those of North Carolina. The parties agree that the tort claims in the present action are governed by California law,[3] but they disagree as to the law applicable to the contract claims.

The settlement agreement provides that it will be governed by California law, North Carolina law "or either of them." This cryptic phrase takes on meaning when read with the choice-of-law provisions in the accompanying Brokerage/Agency Agreements. Because three of them had provisions choosing California law and one chose North Carolina law, it seems likely that the parties intended each transaction to be governed by the state law indicated by the corresponding brokerage agreement. Accordingly, we believe the parties intended California law to govern this case since the parts of the settlement agreement at issue relate to the brokerage agreements that provide that California law governs.

California and North Carolina courts treat contractual choice-of-law provisions in a similar fashion. California will honor the parties' choice of law unless: (1) the chosen state has no substantial relation to the parties or the transaction; or (2) the choice results in a violation of California public

---

**2.** Defamation claims were dismissed voluntarily.

**3.** Both North Carolina and California courts have deferred when the parties assume one state's law applies. *See Glickman v. Collins*, 13

Cal.3d 852, 857 n. 1, 533 P.2d 204, 207 n. 1, 120 Cal.Rptr. 76, 79 n. 1. (1975); *Tennessee Carolina Transportation, Inc. v. Strick Co.*, 283 N.C. 423, 196 S.E.2d 711, 716 (1973).

policy or the evasion of a California statute. *S.A. Empresa*, 641 F.2d at 749; *Sarlot-Kantarjian v. First Pennsylvania Mortgage Trust*, 599 F.2d 915, 917 (9th Cir.1979); *Ashland Chemical Co. v. Provence*, 129 Cal.App.3d 790, 794, 181 Cal. Rptr. 340, 342 (1982); *see Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 494, 551 P.2d 1206, 1208, 131 Cal.Rptr. 374, 376 (1976); *Hall v. Superior Court*, 150 Cal.App.3d 411, 416–17, 197 Cal. Rptr. 757, 761 (1983). North Carolina will honor a choice-of-law provision if there is a reasonable basis for the parties' choice unless application of the chosen law would violate a fundamental policy of the state whose law would otherwise apply. *Behr v. Behr*, 46 N.C.App. 694, 266 S.E.2d 393, 395 (1980); *see A.E.P. Industries v. McClure*, 308 N.C. 393, 302 S.E.2d 754, 760 (1983).

■ The "substantial relation" and "reasonable basis" language come from the application of *Restatement (Second) of Conflict of Laws* § 187(2) (1971).[4] *See Gamer v. duPont Glore Forgan, Inc.*, 65 Cal.App.3d 280, 287–88, 135 Cal.Rptr. 230, 232 (1977); *Behr*, 266 S.E.2d at 395. Under that application, California bears the requisite substantial or reasonable relation to the transactions that involve the sale of California property. *See* 1 B. Witkin, *Summary of California Law* § 65 at 72 (8th ed. 1973). California also is sufficiently related to the sale of the Bahamas property since one of the parties to the settlement agreement, Zeghar, was a California resident. Also, according to the settlement agreement, the corporate defendant involved in the Bahamas transaction is an alter ego of Zeghar. If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice. *Re-statement (Second) of Conflict of Laws* § 187 comment f.

■ We also must consider whether any fundamental public policies might be offended by applying the parties' choice of law. California obviously would not violate its own public policy by applying its own law. As noted, the public policy considered by North Carolina is that of the state of otherwise applicable law. In the absence of a valid contractual choice of law, North Carolina applies the law of the state in which the contract was "made" to determine questions of validity and interpretation of the contract. *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 261 S.E.2d 655, 656 (1980); *Davis v. Davis*, 269 N.C. 120, 152 S.E.2d 306, 310 (1967). A contract is "made" in the place where the last act was done that was essential to a meeting of the minds of the parties. *Fast v. Gulley*, 271 N.C. 208, 155 S.E.2d 507, 510 (1967); *Suitt Construction Co. v. Seaman's Bank for Savings*, 30 N.C.App. 155, 226 S.E.2d 408, 410 (1976). It is unclear from the record whether this act took place in Georgia (where the contract apparently was executed), in North Carolina, or in California. If a North Carolina court determined that the contract was "made" in Georgia or North Carolina, it would proceed to look at the public policies of that state. Although we are obviously hampered at this stage of the proceedings by an inadequate record we currently perceive no conflicts with the policies of either state and so we see no reason why California law should not apply. *See* note 8 *infra*. Further factual development could alter this view. The district court should not consider itself bound if facts alter this tentative holding.

**4.** Section 187. Law of the State Chosen by the Parties

\*　\*　\*　\*　\*　\*

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.

## II. Merits

### A. Statutory Framework

The district court relied on the plaintiffs' failure to comply with California statutes that regulate real estate brokers to dismiss the case. "It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker ... *within this State* [California] without first obtaining a real estate license...." Cal.Bus. & Prof.Code § 10130 (West Supp.1986) (emphasis added). A real estate broker is defined, in part, as one who, for compensation or expectation of compensation, "[s]ells or offers to sell ..., solicits prospective sellers or purchasers of ..., or negotiates the purchase, sale or exchange of real property ..." for another. Cal.Bus. & Prof.Code § 10131(a) (West Supp.1986). Finally,

No person engaged in the business or acting in the capacity of a real estate broker ... *within this State* shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker ... at the time the alleged cause of action arose.

Cal.Bus. & Prof.Code § 10136 (West 1964) (emphasis added).

### B. Dismissal of Contract Claims

■ A contract to perform acts barred by California's licensing statutes is illegal, void and unenforceable. *In re Estate of Baldwin,* 34 Cal.App.3d 596, 604, 110 Cal. Rptr. 189, 194 (1973); *Fellom v. Adams,* 274 Cal.App.2d 855, 79 Cal.Rptr. 633, 638 (1969). Plaintiffs claim that the acts that they were to perform under the settlement agreement were not brokerage services and so were not governed by the statutory scheme. They suggest that they were acting as attorneys-in-fact rather than as brokers. We disagree. Although persons acting as attorneys-in-fact need not be licensed, Cal.Bus. & Prof.Code § 10133(a)(2) (West Supp.1986); *Hayter v. Fulmor,* 66 Cal.App.2d 554, 560, 152 P.2d 746, 748

(1944); *People v. Stevens,* 269 Cal.App.2d 470, 478, 75 Cal.Rptr. 118, 124 (1969), there is no showing that plaintiffs acted in that capacity. The phrases "attorney-in-fact" and "power of attorney" are not found in the settlement agreement. Wilson is empowered by the agreement to offer real estate properties for sale, clearly placing him within California's definition of a real estate broker. *See* Cal.Bus. & Prof.Code § 10131(a). Moreover, factual allegations in the complaint are inconsistent with an attorney-in-fact relationship. The complaints allege that defendants breached the agreement by failing to consider *bona fide* purchase offers or to negotiate with potential purchasers obtained by Wilson. They do not allege that Wilson, as attorney-in-fact, entered into sales agreements which the defendants refused to honor.

■ Plaintiffs also claim that if portions of the settlement agreement are illegal because of violations of the broker licensing statutes, we should treat the remaining portions as severable and honor them. Legal portions of contracts are severable from illegal portions where there is separate legal consideration attributable to the severed portion of the agreement. *See Mailand v. Burckle,* 20 Cal.3d 367, 384, 572 P.2d 1142, 1152, 143 Cal.Rptr. 1, 11 (1978); *Henson v. Dixie Finance Corp. of Georgia,* 250 Ga. 132, 296 S.E.2d 593, 595 (1982); *Rose v. Vulcan Materials Co.,* 282 N.C. 643, 194 S.E.2d 521, 531–32 (1973); *see also Abramson v. Gulf Coast Jewelry & Specialty Co.,* 445 F.2d 802, 803 (5th Cir. 1971) (per curiam) (allowing severance of contract when partially illegal due to lack of broker's license).

Each of the three potential sales transactions at issue has separate consideration attributed to it in the settlement agreement and therefore is severable from the others. However, plaintiffs apparently argue that the brokerage aspects are severable from other portions of the agreement. Since their only claim relates to damages for brokerage services rendered and for failure to comply with the brokerage portions of the agreement, their argument is unhelpful

to them. Any portions of the settlement agreement severable from the arrangement to provide brokerage services are irrelevant to this case.

 Defendants, on the other hand, argue that the entire settlement agreement is illegal because it calls for Consul, which has no licenses at all, to provide brokerage services. A contract under which an unlicensed party performs brokerage services is unenforceable, even by a licensed broker who acted pursuant to the same contract. *See In re Guardianship of the Estate of Prieto*, 243 Cal.App.2d 79, 86, 52 Cal.Rptr. 80, 84 (1966); *McArver v. Gerukos*, 265 N.C. 413, 144 S.E.2d 277, 282 (1965). The complaints do not allege that Consul performed any brokerage services. However, whether the agreements contemplated that Consul would act as a broker is uncertain. The settlement agreement is clear on its face that Wilson would perform all brokerage services; there is no mention of Consul doing anything as broker. Moreover, the brokerage agreements refer to both Wilson and Consul as "broker" or "agent" and include the following phrase: "[defendants] do hereby constitute, appoint, name and make the said Kenneth B. Wilson, doing business as Ken Wilson Associates, and as President of CONSUL, Ltd., to be their lawful brokers and sales agents...." It is arguable that this language evidences an intent to have Consul perform brokerage services.

 Whenever possible, courts interpret contractual language to uphold the validity of a contract. *See Walsh v. Schlecht*, 429 U.S. 401, 408, 97 S.Ct. 679, 685, 50 L.Ed.2d 641 (1977); *Saavedra v. Donovan*, 700 F.2d 496, 500 (9th Cir.), *cert. denied*, 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983); *Bleecher v. Conte*, 29 Cal.3d 345, 350, 698 P.2d 1154, 1157, 213 Cal.Rptr. 852, 855 (1981); Cal.Civ.Code § 1652 (West 1985); *Grantham Transfer Co. v. Hawes*, 225 Ga. 436, 169 S.E.2d 290, 296 (1969); *see also McArver*, 265 N.C. 413,

144 S.E.2d at 282 (construing brokerage contract to make it legal despite participation of unlicensed party). We are particularly loathe to upset agreements intended to resolve disputes in litigation. We note also that the defendants allegedly drafted the language in the brokerage agreements that they claim voids the entire settlement. It is axiomatic that ambiguities in contractual language are construed against the drafter. *See InterPetrol Bermuda Ltd. v. Kaiser Aluminum International Corp.*, 719 F.2d 992, 998 (9th Cir.1983); *Victoria v. Superior Court*, 40 Cal.3d 734, 710 P.2d 833, 835, 222 Cal.Rptr. 1, 3 (1985); Cal.Civ. Code § 1654 (West 1985); *Anderson v. Southeastern Fidelity Insurance Co.*, 251 Ga. 556, 307 S.E.2d 499, 500 (1983); *O'Grady v. First Union National Bank*, 296 N.C. 212, 250 S.E.2d 587, 597 (1978). We conclude that the conflict between the language of the settlement agreement and the brokerage agreements, leaves doubt as to the parties' intent with regard to Consul's role. On this record, the district court erred in dismissing for failure to state a claim. If, on remand, the district court determines that the parties intended that Consul perform brokerage services, the settlement agreement would be unenforceable. Similarly, if Consul, in fact, performed brokerage services as to any transaction within the meaning of the California statute, neither Wilson nor Consul could recover for services related to the particular transaction.

Defendants claim that, in any event, the district court correctly dismissed the complaint because Wilson did not have a California license. We disagree. There is nothing in the complaint to indicate that Wilson performed any regulated acts in California. No California case decides whether the California licensing statutes apply to out-of-state acts relating to in-state (California) realty performed by a broker licensed in another state.[5] The stat-

---

**5.** Defendants claim that *Sheble v. Turner*, 46 Cal.App.2d 762, 117 P.2d 23 (1941) and *Silverberg v. Baum*, 95 Cal.App. 535, 273 P. 47 (1928)

decide the issue. *Sheble* does not discuss whether brokerage acts took place out of state. *Silverberg* holds that the fact that acts took place

utes refer to acts *within the state,* and we hesitate to ignore this plain language.

In the absence of California authority, we look for guidance to courts in other jurisdictions to determine how California would decide an issue. *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980); *Lewis v. Anderson,* 615 F.2d 778, 781 (9th Cir.1979), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980). All relevant authority suggests that licensing schemes like California's do not apply to out-of-state activities regarding in-state land.[6] Many courts have found real estate licensing statutes inapplicable to transactions in which brokers performed all of the regulated functions outside the state in which they were not licensed. Some of these courts rely on choice-of-law principles and refuse to apply the law of the state where the broker has no license, but has done little or no work. *E.g., Coldwell Banker & Co. v. Karlock,* 686 F.2d 596, 599–602 (7th Cir.1982); *James v. Hiller,* 85 Ariz. 40, 330 P.2d 999, 1002 (1958); *Cochran v. Ellsworth,* 126 Cal.App.2d 429, 272 P.2d 904, 907–08 (1954). Others rely on the substantive ground that the licensing statutes do not apply to out-of-state activities. *E.g., Lucas v. Gulf & Western Industries,* 666 F.2d

800, 803–04 (3d Cir.1981); *Paulson v. Shapiro,* 490 F.2d 1, 4–5 (7th Cir.1973); *Sun Sales Corp. v. Block Land, Inc.,* 456 F.2d 857, 862–63 (3d Cir.1972); *Richland Development Co. v. Staples,* 295 F.2d 122, 129 (5th Cir.1961); *Maas v. Merrell Associates,* 13 Ark.App. 240, 682 S.W.2d 769, 771 (1985); *Republic Funding Corp. v. Americable Associates,* 478 So.2d 1097, 1098 (Fla. App.1985); *Keenan Co. v. Pamlico, Inc.,* 245 Ga. 842, 268 S.E.2d 334, 336 (1980); *Johnson v. Allen,* 108 Utah 148, 158 P.2d 134, 139 (1945); *In re Estate of Stoddard,* 60 Wash.2d 263, 373 P.2d 116, 118–20 (1962). This is true even if the land is located in the forum state. *See, e.g., Paulson,* 490 F.2d at 2.

The latter group of cases find no interference with the public policy of the state in which the broker is not licensed in allowing recovery for services performed out of state, *Coldwell Banker,* 686 F.2d at 601; *Sun Sales,* 456 F.2d at 863; *Richland Development,* 295 F.2d at 129, and have noted that the language "in this state" demonstrates that licensing statutes were "not intended to reach persons who render brokerage services outside" the state in question, *Lucas,* 666 F.2d at 803; *see Paulson,* 490 F.2d at 4; *Maas,* 682 S.W.2d at 771.

out of state was irrelevant where plaintiff had not claimed any out-of-state licenses, because the court assumed that other states had regulation schemes like California's. *See* 273 P. at 48. The case is inapposite because Wilson has alleged that he has licenses from other states.

Defendants also rely on a California real estate treatise for the proposition that the licensing statutes do apply to out-of-state acts concerning California land. *See* H. Miller & M. Starr, *Current Law of California Real Estate* § 6.7 (Supp.1985). However, the treatise cites no authority for this proposition.

**6.** Defendants cite several cases for the proposition that "the broker seeking to recover compensation must be licensed by the state in which the action is brought *and* in which the property is located...." In these cases, however, either plaintiffs performed some act in a state in which they were not licensed or there was no indication that they had not. *See Marina Management Corp. v. Brewer,* 572 F.2d 43 (2d Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 104, 58 L.Ed.2d 123 (1978); *Poverman v. Walnut Hill*

*Plaza, Inc.,* 261 F.Supp. 176, 178 (D.R.I.1966); *Horwitz v. Food Town, Inc.,* 241 F.Supp. 1, 2–3 (E.D.La.1965), *aff'd* 367 F.2d 584 (5th Cir.1966); *Campbell v. Duncan,* 84 F.Supp. 732, 734–36 (E.D.Ark.1949). Language in three of these cases supports our conclusion. *See, e.g., Poverman,* 261 F.Supp. at 178 ("the pertinent provisions in question are to be interpreted so as to bar a non-resident broker, who is not licensed in Rhode Island, from maintaining a suit for his commission *if he has done any act in Rhode Island* in the furtherance of the prospective sales contract") (emphasis added); *Horwitz,* 241 F.Supp. at 2–3 ("if the plaintiff was, in fact, engaged in such activities *in the State of Louisiana,* without a license, he was doing so in violation of Louisiana law") (emphasis added); *Campbell,* 84 F.Supp. at 736 (plaintiff's performance of some brokerage services in Arkansas crucial to finding of no recovery). The fourth case, *Marina Management,* turned on whether plaintiff was selling real estate or corporate assets, *see* 572 F.2d at 45–48; the court did not discuss whether plaintiff had performed acts within Connecticut.

■ California, itself, refused to require an Arizona license for an Arizona land transaction involving work done primarily in California by a licensed California broker. *Cochran*, 272 P.2d at 909. "Since plaintiff was duly licensed as a broker in California, *where his services were performed*, the agreement was not void." *Id.* (emphasis added). We believe that *Cochran* is a good indication that California would follow the other jurisdictions that do not bar recovery by a broker unlicensed in the state in which the property is located where no brokerage functions are performed in that state. Thus, we find that it was inappropriate on this record to dismiss the allegations involving the California properties for failure to state a claim. If the evidence indicates that Wilson did perform brokerage activities in California, the motion can be renewed at a later point in the proceedings.[7]

■ The claims arising out of the Bahamas transaction also should have survived the motion to dismiss. The actions of a licensed North Carolina broker taken outside of California to effectuate the sale of property in the Bahamas for a Bahamian Corporation do not offend California licensing statutes. We note as well that the claims arising from the transaction were brought in a North Carolina court. Again, if the evidence demonstrates that Wilson performed brokerage activities in California, the motion to dismiss can be renewed.[8] *See Hayter v. Fulmor*, 66 Cal.App.2d 554,

152 P.2d 746, 748 (1944) (brokerage license statutes apply even if brokered land situated outside California).

### C. Dismissal of Tort Claims

■ The district court found that the tort claims were barred because of the illegality of the contracts. California does not allow tort claims where proof of the illegality is necessary to establish plaintiff's case. *Wong v. Tenneco, Inc.*, 39 Cal.3d 126, 135, 702 P.2d 570, 576, 216 Cal.Rptr. 412, 418 (1985); *Lee On v. Long*, 37 Cal.2d 499, 234 P.2d 9, 11–12 (1951), *cert. denied*, 342 U.S. 947, 72 S.Ct. 553, 96 L.Ed. 704 (1952). However, as plaintiffs argue, the contract was not illegal at the outset—it could have been performed entirely outside California. To the extent the original contract was legal, it can form the basis for tort actions. *See Anthony v. Enzler*, 61 Cal.App.3d 872, 878, 132 Cal.Rptr. 553, 557 (1976) (interference with contract action based on legal but unenforceable contract allowed); *Keely v. Price*, 27 Cal.App.3d 209, 216, 103 Cal.Rptr. 531, 535–36 (1972) (same). The district court improperly dismissed these claims as well.[9]

### CONCLUSION

Because there is nothing in the complaints that indicates that plaintiffs performed any regulated acts in California, dismissing the complaints for failure to state a claim was inappropriate. The California statutes apply only to acts per-

---

**7.** The strictness with which California enforces its licensing scheme suggests that *any* regulated actions within California will bar plaintiffs' contract claims. *See In re Guardianship of the Estate of Prieto*, 243 Cal.App.2d 79, 52 Cal.Rptr. 80, 84 (1966); *Abrams v. Guston*, 110 Cal.App.2d 556, 243 P.2d 109, 110 (1952).

**8.** Because we conclude that California law does not bar these claims, we see no conflict with policies of North Carolina and Georgia. Both of these states have licensing schemes similar to California's. *See* Ga.Code §§ 84–1401—84–1404 (1985 & 1986 Supp.); N.C.Gen.Stat. §§ 93A–1, 93A–2 (1985). These schemes would not be frustrated by allowing a licensed North Carolina broker to recover for acts that may have been performed entirely in North Carolina.

Because *de minimis* brokerage activity in California would bar recovery under California law, a North Carolina court might reject the parties' choice of law if the facts demonstrate that most of Wilson's services were performed in North Carolina. It would not seem to accord with North Carolina's public policy to allow defendants to avoid payment for services actually rendered by a licensed North Carolina broker merely because some small portion of the services were performed in California. *See Cochran*, 272 P.2d at 909.

**9.** Plaintiffs raised alternative claims in their complaints, which were not addressed by the district court. Because we reverse the district court's dismissal of the primary claims we do not address the alternative claims.

formed within California. We remand for further proceedings.

REVERSED and REMANDED.